THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
DAVID WILLIAM DAY, Defendant-Appellant.

Fourth District   No. 4—90—0033

Opinion filed September 6, 1990.

McLean Arnold, of Bloomington, for appellant.

Charles G. Reynard, State's Attorney, of Bloomington (Kenneth R. Boyle and Robert J. Biderman, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE SPITZ delivered the opinion of the court:

This is an appeal by defendant David William Day from his conviction of the possession of less than 15 grams of a substance containing cocaine (Ill. Rev. Stat. 1987, ch. 56½, par. 1401(b)(2)) following a bench trial in the circuit court of McLean County. Defendant was sentenced to 30 months' probation as a first offender (Ill. Rev. Stat. 1987, ch. 56½, par. 1410), subject to defendant serving 30 days' peri-

odic imprisonment on weekends, with credit for two days served, completing 500 hours of community service, and paying a $500 fine, a $20 Crime Victims Compensation Act (Ill. Rev. Stat. 1987, ch. 70, pars. 71 through 90) fine, court costs and a $50 statutory surcharge. He was also ordered to pay $10 per month while on probation for a probation service fee.

On appeal, the defendant raises three issues, *i.e.*, whether the trial court erred by denying (1) defendant's motion to examine evidence, (2) defendant's motion for a deposition, and (3) the motion to suppress evidence.

On June 19, 1989, defendant filed a motion to suppress evidence. Prior to that, on June 5, 1989, defendant filed a motion to examine a piece of evidence described as a "fold envelope." At the hearing on the motion, the State objected on the ground that such an inspection would cause a problem in the proof of chain of custody. Defendant's counsel suggested counsel go to the evidence lockup to examine the alleged container of cocaine. The trial court denied the motion after suggesting defendant's counsel might communicate to the State's Attorney a week or so ahead of the hearing the desire to examine the evidence at the hearing on the motion for suppression of evidence, which counsel indicated he intended to file. Defense counsel indicated he would file a subpoena *duces tecum* for the production of the item after the court stated a discussion with the police officer might satisfy defendant's counsel.

On June 22, 1989, defendant filed a motion for a deposition after the officer failed to respond to defense counsel's letter requesting a meeting to discuss the matter. On September 6, 1989, the motion for deposition was denied.

■ Defendant objects to the denial of his request to view the physical evidence in the State's control. *People v. Flowers* (1972), 51 Ill. 2d 25, 281 N.E.2d 299, upon which defendant relies, requires the State to disclose to defense counsel all relevant, nonprivileged, pretrial reports or statements of prosecution witnesses. *Flowers* does not suggest defendant's counsel may examine the physical evidence outside of court, nor does it hold the witnesses are subject to being deposed by defense counsel.

The State also recognizes the defendant has a right to have tests conducted. (*Miller v. Pate* (1967), 386 U.S. 1, 17 L. Ed. 2d 690, 87 S. Ct. 785.) However, the State also has an interest in preserving the evidence and insuring its admissibility. *People v. Garza* (1981), 92 Ill. App. 3d 723, 415 N.E.2d 1328.

■ Here defendant did not request the item be submitted to an

expert for testing. And since defendant's counsel merely wanted to observe the envelope to ascertain whether to file a motion to suppress, defendant has failed to convince this court that the purpose of defendant's request was not achieved when the item was introduced as evidence at the hearing on the motion to suppress. Therefore, defendant could not have been denied a fair trial by reason of the denial of the earlier motion. Further, defendant does not contend the rules of discovery in criminal cases have in any way been violated by the State. (107 Ill. 2d Rules 411 through 415.) Nor has defendant cited any authority which would authorize the taking of discovery depositions in criminal cases.

■■ Of course, the more significant question is whether the evidence should have been suppressed. Before reviewing all the circumstances presented to the trial court in order to determine the propriety of the court's ruling, we note that a court of review will not disturb the trial court's finding on a motion to suppress unless the finding of the trial court is shown to be manifestly erroneous. *People v. Waddell* (1989), 190 Ill. App. 3d 914, 546 N.E.2d 1068.

At the hearing on the motion to suppress, Illinois State Trooper Benny R. Percy was the sole witness. Percy testified that on April 18, 1989, he stopped defendant's automobile for speeding. The time was 7:17 p.m., with the traffic stop being made along I-55, just north of the I-74 westbound exit to Peoria. There were four occupants in defendant's vehicle. Percy was armed at the time.

Prior to exiting his police vehicle, Percy radioed to check on the license plates and was advised the vehicle was not reported stolen. Nor was there anything improper about the license plates.

The officer noticed the defendant exit his vehicle. Even though the officer's car had a public-address system in it, he did not use it. Instead, Percy exited his automobile to confront the defendant. When Percy was at about the front left quarter panel of his squad car, he observed the passengers of defendant's vehicle "jumping around," and the front right-seat passenger move forward and lean forward from his normal sitting position. Defendant was outside his automobile at that time at about the left rear bumper area of his car, walking toward Percy's squad car.

At that point, prior to anything being said by defendant, the officer had defendant place his hands on the rear of his automobile and conducted a frisk for weapons. After the frisk began, Percy asked defendant if he had any identification. During the frisk, Percy noticed a small rectangular object in the defendant's right front pants pocket. When he felt the object in defendant's pocket, he was not sure what

it was. The object was about 1½ inches in length and about a quarter-inch in thickness. Percy believed the object could have been a razor blade wrapped up in something. He testified that until he opened it, he felt the package could have contained a razor blade. Before removing the package from defendant's pocket, Percy asked defendant what was in his pocket and defendant gave no response. What he observed, after taking the object from defendant's pocket, was a small, white envelope, which he described as a "druggist fold." Percy testified that through training he was familiar with such a conveyance being utilized to hold loose drugs. He had also observed similar folded paper on traffic stops in which he had seized illegal drugs. After he recognized the druggist fold, he opened the package.

In *Waddell*, this court stated:

"Even though a police officer does not possess probable cause to make an arrest, a police officer may approach persons to investigate possible criminal activity and to frisk the individuals to ascertain the presence of weapons in order to protect the police officer and prospective victims of violence. (*Terry v. Ohio* (1968), 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868.) In Illinois, these rules have been embodied in the Code. Section 107—14 provides:

'A peace officer, after having identified himself as a peace officer, may stop any person in a public place for a reasonable period of time when the officer reasonably infers from the circumstances that the person is committing, is about to commit or has committed an offense as defined in Section 102—15 of this Code, and may demand the name and address of the person and an explanation of his actions. Such detention and temporary questioning will be conducted in the vicinity of where the person was stopped.' (Ill. Rev. Stat. 1987, ch. 38, par. 107—14.)

Section 108—1.01 provides:

'When a peace officer has stopped a person for temporary questioning pursuant to Section 107—14 of this Code and reasonably suspects that he or another is in danger of attack, he may search the person for weapons. If the officer discovers a weapon, he may take it until the completion of the questioning, at which time he shall either return the weapon, if lawfully possessed, or arrest the person so questioned.' (Ill. Rev. Stat. 1987, ch. 38, par. 108—1.01.)" (*Waddell*, 190 Ill. App. 3d at 924-25, 546 N.E.2d at 1074.)

Certainly, the moving traffic violation justified the stop in this case.

(See *People v. Attaway* (1976), 41 Ill. App. 3d 837, 354 N.E.2d 448.) Defendant does not challenge that fact.

█▀█ █ The mere fact that defendant was stopped for a traffic offense does not necessarily afford a reasonable basis for believing defendant was armed and dangerous. (Compare *People v. Palmer* (1976), 62 Ill. 2d 261, 342 N.E.2d 353; *People v. Thomas* (1964), 31 Ill. 2d 212, 201 N.E.2d 413.) As was stated in *People v. Galvin* (1989), 127 Ill. 2d 153, 535 N.E.2d 837, although the officer is not required to ask questions before frisking a person the officer legitimately stopped, the right to frisk does not automatically follow the right to stop. The test for determining the validity of the frisk is an objective one, but even though the police officer's subjective feelings do not establish the validity of the frisk, testimony of the officer's feelings is a factor to consider within the totality of circumstances known to the officer at the time. (*Galvin*, 127 Ill. 2d 153, 535 N.E.2d 837.) "In determining the reasonableness of the officers' conduct, the facts must be considered not from the perspective of analytical hindsight, but rather as they would have been viewed by a reasonable officer confronting them in the performance of his duties." (*People v. Smithers* (1980), 83 Ill. 2d 430, 439, 415 N.E.2d 327, 332.) Considering the time of day the defendant's car was stopped, the location of the stop, defendant exited his vehicle without being told to do so and approached the squad car, Percy was alone, there were three other occupants in defendant's vehicle, and one of those occupants made a movement inside the car which might be interpreted as reaching for a weapon under the seat or on the floor of the car, the officer was justified in taking charge of the situation for his own protection and frisking the defendant to ensure he (the officer) was not in danger. The officer testified he felt his safety might be in jeopardy if he did not take charge of the situation.

The defendant attempted to persuade this court that the failure of Percy to testify he believed defendant was going to attack him means the frisk was not justified. In support of this proposition, defendant cites *People v. Dotson* (1976), 37 Ill. App. 3d 176, 345 N.E.2d 721, and *People v. McClanahan* (1989), 191 Ill. App. 3d 276, 547 N.E.2d 681. These cases are factually distinguishable. In *Dotson* an order suppressing evidence was affirmed, not because of the officer's stated belief, but because the only articulable fact supporting the belief was the fact that the defendant, a traffic offender, shifted his weight after placing his hand in his pocket on a winter day. The court concluded the behavior merely suggested the individual was trying to keep warm. *McClanahan* involved the search of an automobile, not the stop

and frisk of the individual driving the vehicle. The search of defendant occurred only after a gun was found in the car following an unauthorized and improper search of the car. This court affirmed the suppression of evidence in *McClanahan.*

In this case, not only was the officer's search proper, but it was also confined to an intrusion reasonably designed to discover objects capable of use as a weapon. This issue is discussed at length by Professor LaFave, in his treatise on the fourth amendment:

"As one commentator has aptly noted, it 'will be a rare case in which, in the process of a pat-down, an officer will not come upon some object or objects secreted in the apparel of the suspect.' Thus, another important question which must be resolved in order to assess the conduct of a police officer who has performed a frisk is that of what tactile sensations produced by the pat-down will justify a further intrusion into the clothing of the suspect.

At the outset, it must be asked what the legal test is at this point. In *Terry,* the Court stressed that after patting down the suspects Officer McFadden 'did not place his hands in their pockets or under the outer surface of their garments until he had felt weapons.' But surely this does not mean that the policeman must know beyond any doubt that what he has felt is a weapon; the officer 'need not be absolutely certain that the individual is armed.' Sometimes it is said that he must feel 'an object which he reasonably believes to be a dangerous weapon,' which may be an appropriate test if this reasonable belief does not require that it be possible to determine that it is more probable than not that the object is a weapon. As some courts put it, it must be asked whether the object 'feels like a weapon,' whether there was anything in the officer's 'perception to indicate it was not a weapon either because of size or density.'

In making a judgment on this point in a particular case, it may be critical to determine what properly may be deemed a potential weapon in this context. Some courts 'condone fanciful speculation' on this point. Illustrative are cases holding that an object thought to be a cigarette lighter may be searched for because 'it could be used in a doubled up fist as a punch or thrown at the officer or used to burn the officer or the police unit,' that a soft object may be searched for because it might be 'a rubber water pistol loaded with carbolic acid or some other liquid, which if used by a suspect could permanently blind

an officer,' and that an object thought to be a shotgun shell could be searched for because it could be detonated by a sharp object and the suspect 'might want to explode the shell even in a way which might entail considerable personal risk to himself.'

Decisions of the type just described are unsound. As noted in *People v. Collins* [(1970), 1 Cal. 3d 658, 463 P.2d 403, 83 Cal. Rptr. 179]:

> To permit officers to exceed the scope of a lawful pat-down whenever they feel a soft object by relying upon mere speculation that the object might be a razor blade concealed in a handkerchief, a 'sap,' or any other atypical weapon would be to hold that possession of any object, including a wallet, invites a plenary search of an individual's person.

*Collins* represents the correct view, which is also followed by other courts. It reflects two very sensible considerations: (1) To allow a search for anything which could under some circumstances be employed as a weapon would be to permit a search just as intrusive as that which can be made incident to a custodial arrest, except in the rare case in which the suspect's pockets are entirely empty. For example, 'something of the size and flexibility of a razor blade could be concealed virtually anywhere, and accordingly provide the pretext for any search, however thorough.' (2) In determining what objects might be a weapon, consideration must be given to what types of objects could be so employed in the setting of the particular case. Generally speaking, it may be said that certain items which might be employed as weapons in a surprise attack from the rear would not be effective during the face-to-face encounter of a field interrogation. And in a particular situation, it may be apparent that a particular type of weapon would be of no use because of the superior police presence. Illustrative is *United States v. Reid* [(E.D.N.Y. 1972) 351 F. Supp. 714], holding unlawful a search for an item which might have been a slap jack in the pocket of the companion of another person who had just been arrested by several agents with drawn revolvers and shotguns. 'With the weaponry in the hands of the agents trained on the suspects, a slap jack could hardly have been a threat to the arresting agents.' This is not to say, however, that it is necessary the officer suspect the object is a firearm.

Under the better view, then, a search is not permissible when the object felt is soft in nature. If the object felt is hard, then the question is whether its 'size or density' is such that it

might be a weapon. But because 'weapons are not always of an easily discernible shape,' it is not inevitably essential that the officer feel the outline of a pistol or something of that nature. Somewhat more leeway must be allowed upon 'the feeling of a hard object of substantial size, the precise shape or nature of which is not discernible through outer clothing,' which is most likely to occur when the suspect is wearing heavy clothing. Under this approach, courts have upheld as proper searches which turned up certain objects other than guns, such as a pocket tape recorder, a pipe, a pair of pliers, cigarette lighter, several keys taped together, or a prescription bottle. In making a judgment on this issue, some courts take into account other evidence bearing upon whether it appears the officer was acting in good faith, such as whether the object felt more like an item of evidence the officer apparently suspected the person might have on him than a weapon.

Assuming the object discovered in the pat-down does not feel like a weapon, this only means that a further search may not be justified under a *Terry* analysis. There remains the possibility that the feel of the object, together with other suspicious circumstances, will amount to probable cause that the object is contraband or some other item subject to seizure, in which case there may be a further search based upon that probable cause." 3 W. LaFave, Search and Seizure §9.4(c), at 521-24 (2d ed. 1987).

While this court respects the opinions of Professor LaFave and the justices cited in the *Collins* case, we simply do not agree that police officers should be subjected to the danger of injury of any kind merely because some judges and commentators may lack the imagination of criminals.

■ The courts of Illinois have frequently noted that objects which are not *per se* deadly weapons may be used in such a manner as to become deadly weapons. (*People v. Carter* (1951), 410 Ill. 462, 102 N.E.2d 312; *People v. Van* (1985), 136 Ill. App. 3d 382, 483 N.E.2d 666.) The need to stop and frisk is a practical decision, and courts should not place so onerous a test on the sufficiency of the officer's suspicions that the defendant is presently armed and dangerous when the protection of the investigating officer is at stake. The officer need only demonstrate a substantial possibility defendant possessed an instrumentality which could be utilized to commit bodily harm. *People v. Kantowski* (1983), 98 Ill. 2d 75, 455 N.E.2d 1379.

■ In *People v. Morgan* (1985), 138 Ill. App. 3d 99, 484 N.E.2d

1292, this court concluded that a bag of cannabis in the defendant's coat was not likely to produce a bulge resembling a weapon. However, in the case at bar, the object was believed by the officer to be a razor blade. It is reasonable for the trial court to find that a piece of paper can be folded in such a manner as to produce a tactile sensation similar to that of a razor blade. Furthermore, with three other people in defendant's car and the officer being alone, it is conceivable the officer might have been distracted, giving the defendant the opportunity to attack the officer with the razor blade.

LaFave recognizes there is a need to protect officers who make arrests in traffic stop situations from unnecessary risks. (2 W. La-Fave, Search and Seizure §5.2(e), at 457 (2d ed. 1987).) While pointing out the balance which must be maintained between the need to protect the officer and the need to protect citizens from some officers who might use a traffic stop as a pretext for a search, LaFave states:

> "Given the prospect that application to traffic arrests of the 'general authority' to search will result in instances of undiscoverable subterfuge, one is tempted to say that a different search rule is needed in traffic cases, 'one less likely to conceal a search forbidden by the Fourth Amendment.' But this is not easily done. As concluded earlier, a *Terry*-type frisk does not afford the arresting officer sufficient protection against an arrestee, considering their prolonged proximity. Once something beyond the frisk is permitted, it does not seem feasible to describe in meaningful terms a degree of intrusiveness which can reasonably be expected to turn up 'any small hidden weapon which might go undetected in a weapons frisk' but not an item of contraband. And while statistically there may be a lesser likelihood that a traffic violator is armed, it by no means follows that there is any rational basis upon which to determine which traffic violators are armed, or upon which to conclude that a search of some lesser intrusiveness will suffice to discover weapons in such cases. It is troublesome, to say the least, to contemplate affording Officer *A* something less than the protection he needs in making arrests because Officer *B* might abuse the power." (2 W. LaFave, Search and Seizure §5.2(e), at 461 (2d ed. 1987).)

In this case, the issue of whether the traffic stop was a pretext to conduct the search of defendant is not present. Nor is this court attempting to create a new category of permissible searches and, thereby, further complicate the body of case law interpreting the fourth amendment.

Defendant next argues that having removed the article from defendant's pocket, Trooper Percy improperly proceeded, without a warrant, to open the package and view the contents. Defendant asks this court to follow the decision in *People v. Pritchett* (1979), 75 Ill. App. 3d 127, 393 N.E.2d 1157. However, having already decided Percy had the authority to remove the object from defendant's pocket, it is clear *Pritchett* is distinguishable. In a stop-and-frisk situation following a traffic stop, the officer in *Pritchett* located a bulge consisting of no more than a "tobacco like substance." The officer "did not feel as if it contained a metal object or weapon." (*Pritchett*, 75 Ill. App. 3d at 130, 393 N.E.2d at 1160.) The officer's testimony showed he had reason to open the envelope to ascertain whether it contained a razor blade; further, on recognizing it as a druggist fold, he had probable cause to determine whether the contents were contraband.

In *New York v. Belton* (1981), 453 U.S. 454, 69 L. Ed. 2d 768, 101 S. Ct. 2860, the Supreme Court upheld the search of the pocket of a jacket found in a car which had minutes before been occupied by four arrestees. The theory relied on in *Belton* was that the search was incident to the arrest. While criticizing *Belton*'s broad search authority as being of doubtful necessity or desirability, LaFave has this to say about *Belton*:

> "*Belton* does not purport to be a wholesale revision of the *Chimel* rule. Rather, as the Court put it, 'our holding today does no more than determine the meaning of *Chimel*'s principles in this particular and problematic context.' [Referring to *Chimel v. California* (1969), 395 U.S. 752, 23 L. Ed. 2d 685, 89 S. Ct. 2034 (which authorized the search of the defendant and areas immediately accessible to the defendant following the arrest).] This does not mean, however, that *Belton* has adopted a search-incident-arrest [*sic*] rule for containers in vehicles which is not applicable with equal force to containers not in vehicles but possessed by an arrestee. Such a distinction would be inconsistent with the Court's earlier declaration that the Fourth Amendment protection of a container is the same whether it is within or without a vehicle. And it would ignore the fact that the problem giving rise to *Belton*, the asserted need for a 'bright line' on what constitutes 'immediate control' under *Chimel*, is essentially the same as to containers in cars and other containers." 2 W. LaFave, Search and Seizure §5.5(a), at 534-35 (2d ed. 1987).

■ In the case at bar, the search of the package removed from

defendant's pocket was a search incident to an arrest. (See *Pritchett*, 75 Ill. App. 3d 127, 393 N.E.2d 1157.) Unlike *Pritchett*, however, the arrest here was valid. A peace officer may arrest a person when the officer has reasonable grounds to believe the person has committed or is committing an offense. (Ill. Rev. Stat. 1987, ch. 38, par. 107—2(1)(c).) Once the officer observed the "druggist fold" which he recognized as a method of conveying illegal drugs, the officer had probable cause to arrest defendant. Defendant was already under the officer's control for the purpose of the frisk and no additional action on the part of the officer need be taken to invoke the search-incident-to-arrest rationale.

Under the circumstances of this case, the refusal of the trial court to suppress the evidence was not manifestly erroneous. Accordingly, the judgment of the circuit court of McLean County is affirmed.

Affirmed.

STEIGMANN and McCULLOUGH, JJ., concur.