THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
PHILLIP C. RICKSY, Defendant-Appellant.

Fourth District   No. 4—90—0239

Opinion filed December 12, 1990.

Daniel D. Yuhas and Karen Munoz, both of State Appellate Defender's
Office, of Springfield, for appellant.

Craig H. DeArmond, State's Attorney, of Danville (Kenneth R. Boyle,
Robert J. Biderman, and Robert W. Mueller, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE STEIGMANN delivered the opinion of the court:
Defendant, Phillip Ricksy, was convicted at a bench trial of one
count of possession of less than 15 grams of a substance containing
cocaine. (Ill. Rev. Stat. 1989, ch. 56½, par. 1402(b).) He was sentenced to 30 months' probation, fined $500, and ordered to serve
150 days of periodic imprisonment. On appeal, defendant argues
that the trial court erred in denying his motion to suppress evidence. We agree and reverse.

### I. THE EVIDENCE
At the July 1989 hearing on defendant's motion to suppress evidence, the only witness to testify was Danville police officer James
Smutz, who had been so employed for nine years. Smutz testified
that he stopped a Ford Mustang after he observed the left brake

light on the car did not work. He signaled the car to pull over, and it did so after traveling approximately half a block. After Smutz had turned on his red lights and before the Mustang stopped, Smutz saw both the driver and the one passenger, defendant, lean towards the middle of the vehicle. The car had bucket seats, and the driver appeared to be pushing something between his seat and that of the passenger.

As Smutz walked to the driver's door, he noticed the butt of a hunting knife protruding from the back of the driver's seat on the right side. As a result of seeing the knife butt, Smutz directed the driver and defendant to "produce their hands" and get out of the car.

Defendant and the driver were standing at the rear of the Mustang when Smutz looked into the crack between the seats and found an open can of beer. It was wedged between the driver's seat and the console situated between the front seats. Smutz seized the hunting knife, which was within a sheath. Smutz also seized two 12-ounce cans of beer—one open and one not—and a package of cigarette rolling papers.

Danville auxiliary officer Larry Vance was riding with Smutz on the day in question. As Smutz approached the Mustang, he directed Vance to stay behind so Vance could serve as a "cover officer." Smutz explained that a "cover officer" is "supposed to secure the people in the car" being approached by the other officer in the event that officer comes under attack.

Smutz testified that he does not request people in every traffic stop to get out of the vehicle so that he can search the front seat. He did so in this particular case "because of the movement and amount of travel before they stopped, [and because] they appeared to be concealing something from us." He further explained that he considered the knife butt "strongly" in deciding to have the occupants get out of the car.

The primary issue in this case involves the pat-down of defendant by Smutz as defendant was standing at the rear of the Mustang. On direct examination, Smutz testified as follows:

"Q. [Defense counsel]: Did you conduct an exterior pat-down of Mr. Ricksy?

A. Yes, I did.

Q. What did you first notice when you conducted this pat-down?

A. He appeared to have a small, thick paper package in his right front pants pocket.

Q. All right. Were you able to see it protruding from the pants pocket, or was—did you first discover its presence by feel?

A. By feeling it.

Q. And I think you're—well, if you could, would you describe the approximate size of it?

A. It was two inches by an inch and a half, maybe three inches by two inches, somewhere in that area.

Q. Was this an envelope, or how would you describe it?

A. It was a manila envelope.

\* \* \*

Q. All right. Once you felt this package, what did you do?

A. I removed it from his pocket.

Q. In what position was [defendant] at that time? In other words, did he have his hands on the car or something?

A. He was still in the secured position at the back of the Ford with his hands on the car.

Q. All right. This is the position you have ordered him to assume?

A. Yes.

Q. And did you then check to see what contents there were in the package?

A. Yes, I did.

Q. How did you do that?

A. I opened it up and looked inside.

Q. All right. What did you see?

A. Several small clear plastic baggies of a white powdery substance, about the size of your thumbnail."

On cross-examination, Smutz testified about the pat-down as follows:

"A. I—After checking the front of the car, I moved back to the driver and the passenger of the car at the rear of the Mustang.

Q. [Prosecutor]: Okay. And what did you do when you got back to the two subjects?

A. Patted both of them down and checked them.

Q. Now how did you start to pat down the defendant \*\*\*? What did you do at first?

A. I ran my hands down the exterior of his clothing.

Q. Okay. And what if anything did you notice in doing that?

A. There was a small—I want to say, thick paper package

in his right front pants pocket.

Q. Okay, thank you. And I believe you testified that you took that out?

A. And looked into it, yes.

Q. It was not sealed?

A. No.

Q. When you saw inside it, what could you see inside the manila envelope?

A. Small clear plastic baggies of a white powdery substance. Each were [sic] twisted at the top with a little twist tie."

· As the last question on redirect examination, defense counsel asked Smutz, "Was the reason for your check of [defendant] to see whether he had any further alcoholic beverage [sic], or other contraband related to the rolling papers?" Smutz answered, "Yes, it was."

On re-cross-examination, the prosecutor asked one question: "Was that the only reason?" Smutz replied, "That, and he was also checked for any weapons related to the knife that was in the car." When examined further by defense counsel regarding this claim of a check for weapons, Smutz claimed that his police report concerning this incident was consistent with his testimony. That report stated that because of the movement of the car's occupants, Smutz "had them produce their hands, [and] move [sic] them to the back of the car, where they were secured until I could find what was concealed in the car, or what may have been removed from the car."

Defendant argued at the hearing on the motion to suppress that (1) the initial stop was defective because one operating brake light is legally sufficient, (2) the furtive movement in the car was not a sufficient justification for Smutz to order the occupants to get out of the car and to stand near the trunk, (3) the pat-down of defendant by Smutz was not justified, and (4) what Smutz felt during the pat-down did not justify the retrieval of the envelope from defendant's pants pocket and the search of that envelope. The State disputed all of these arguments, noting that because Smutz observed the hunting knife in the car, legitimate concerns for his safety justified the subsequent action he took. The State also claimed that once Smutz found evidence of unlawful possession of alcohol in the car, he had authority to make a full custodial arrest. Last, the State argued that there was probable cause for Smutz to take defendant and the driver into custody "based on the totality of the circum-

stances of the traffic stop."

Section 114—12(e) of the Code of Criminal Procedure of 1963 (Code) (Ill. Rev. Stat. 1989, ch. 38, par. 114—12(e)) sets forth the trial court's responsibilities at the conclusion of a hearing on a motion to suppress evidence, as follows: "The order or judgment granting or denying the motion shall state the findings of facts and conclusions of law upon which the order or judgment is based." Despite this clear legislative mandate, the *entire* response of the court to the arguments of both parties is the following:

"THE COURT: I feel the officer was justified in the limited intrusion upon which he proceeded. The car crept along the east side of Jackson Street for approximately one-half block. During that time there was [*sic*] furtive movements by both parties in the car. That upon approach of the officer to the car, a butt handle of a large, I believe, knife was seen by the officer, which would necessitate his removing the occupants from the vehicle. At this time in looking inside the car he noticed the other paraphernalia. Therefore, the motion to suppress is denied."

## II. ANALYSIS

On appeal, defendant now concedes that the police had probable cause to stop the Mustang "to investigate within permissible limits because of the defective brake light." However, defendant still maintains that "nothing which followed justified his search." Defendant argues that a pat-down search was not justified on these facts, and even if one were justified, Smutz acted unlawfully in removing the envelope from defendant's pants pocket because Smutz had no reason to believe that the item he felt was a weapon. We need not address the first of these arguments because we agree with defendant that even if the pat-down of defendant were permissible, the police officer acted unlawfully in removing the envelope from defendant's pants pockets.

We note that we do not have the benefit of the trial court's findings of fact or conclusions of law on the question of the lawfulness of Smutz's removal of the envelope from defendant's pants pocket. This deficiency makes our job of reviewing the trial court proceedings more difficult.

We suggest the following analytical approach for trial courts to use when deciding motions to suppress evidence. When, as here, the evidence before the court reveals a series of interactions between the police and a person who is being stopped or searched,

the court's analysis should be as finely divided as possible to distinguish among the various stages of that interaction.

Using the present case as an example, the evidence presented at the hearing on the motion to suppress raised the following distinctive questions: (1) Was the initial stop of the Mustang lawful? (2) Assuming the initial stop to be lawful, did the officer lawfully order the passengers to get out and to stand at the rear of the vehicle? (3) Assuming that order was lawful, did the officer lawfully conduct a pat-down of the defendant? And (4) assuming the pat-down was lawful, did the officer lawfully remove the envelope from defendant's pants pocket?

At the conclusion of the evidence and before counsel began their arguments on the motion, had the court framed the issues before it in this fashion, both the trial court and this court could have received clear statements as to what the parties' respective positions were on these issues. An additional benefit would be that each counsel would argue the facts and law counsel deemed supportive. The last advantage of utilizing this procedure would be that the trial court, when complying with the requirements of section 114—12(e) of the Code, could state with specificity its findings of fact with regard to each of these separate questions, as well as its conclusions of law based thereon.

Despite the failure of the trial court to provide either findings of fact or conclusions of law regarding the lawfulness of Smutz' removal ·of the envelope from defendant's pants pocket, that is the determinative issue in this appeal, and we must address it. In a case involving this same question, this court wrote the following:

"Under the doctrine of *Terry v. Ohio* (1968), 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868, when, as contended by the State here, a valid stop has been made, an officer is permitted to conduct a limited search for weapons only where he reasonably suspects that he or another is in danger of attack. Section 108—1.01 of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1983, ch. 38, par. 108—1.01) is in conformity with *Terry* and specifically authorizes peace officers to make such a limited search under those circumstances." *People v. Morgan* (1985), 138 Ill. App. 3d 99, 101, 484 N.E.2d 1292, 1293.

Consistent with this authority, the State concedes that "not all items can be removed from an individual's clothing" by a police officer during a pat-down conducted pursuant to a *Terry* stop. However, citing this court's recent opinion in *People v. Day* (1990), 202

Ill. App. 3d 536, 560 N.E.2d 482, the State argues that an officer need not be absolutely certain that the person stopped is armed; instead, all that is required is that the officer's intrusion be reasonably designed to discover objects capable of use as a weapon. We disagree and conclude that *Day* is factually distinguishable from the ·present case and provides no support for the State's claim that removal of the envelope from defendant's pocket was lawful.

We begin our discussion of this issue by quoting, as we did in *Day*, from Professor LaFave's treatise on the fourth amendment:

> "As one commentator has aptly noted, it 'will be a rare case in which, in the process of a pat-down, an officer will not come upon some object or objects secreted in the apparel of the suspect.' Thus, another important question which must be resolved in order to assess the conduct of a police officer who has performed a frisk is that of what tactile sensations produced by the pat-down will justify a further intrusion into the clothing of the suspect.
>
> At the outset, it must be asked what the legal test is at this point. In *Terry*, the Court stressed that after patting down the suspects Officer McFadden 'did not place his hands in their pockets or under the outer surface of their garments until he had felt weapons.' But surely this does not mean that the policeman must know beyond any doubt that what he has felt is a weapon; the officer 'need not be absolutely certain that the individual is armed.' Sometimes it is said that he must feel 'an object which he reasonably believes to be a dangerous weapon,' which may be an appropriate test if this reasonable belief does not require that it be possible to determine that it is more probable than not that the object is a weapon. As some courts put it, it must be asked whether the object 'feels like a weapon,' whether there was anything in the officer's 'perception to indicate it was not a weapon either because of size or density.' " 3 W. LaFave, Search and Seizure §9.4(c), at 521 (2d ed. 1987).

In *Morgan*, the officer involved contended that the bulging object he felt under defendant's heavy leather jacket during the pat-down felt like a "hard, cylindrical object," which the officer feared might be a weapon. (*Morgan*, 138 Ill. App. 3d at 101, 484 N.E.2d at 1293.) However, when the object was removed from defendant's coat, it turned out to be a bag of cannabis. On these facts, this court concluded that "no grounds existed which would justify the officer's belief that he was likely to be attacked by defendant. It is

difficult to see how a bag of cannabis could produce a bulge in defendant's coat which would resemble a weapon." *Morgan*, 138 Ill. App. 3d at 101-02, 484 N.E.2d at 1293.

In *Day*, the officer who conducted the pat-down pursuant to a *Terry* stop testified that he noticed a "small rectangular object in the defendant's right front pants pocket." (*Day*, 202 Ill. App. 3d at 539, 560 N.E.2d at 485.) The officer testified that he was not sure what the object was, but that it was about 1½ inches in length and about a quarter-inch in thickness. (*Day*, 202 Ill. App. 3d at 539-40, 560 N.E.2d at 485.) The officer testified that he believed the object could have been "a razor blade wrapped up in something." *Day*, 202 Ill. App. 3d at 540, 560 N.E.2d at 485.

The crucial distinction between *Day* and *Morgan* on the one hand and the present case on the other is that in both *Day* and *Morgan* the officer conducting the pat-down testified that *he believed* the object he felt during the pat-down might be some kind of weapon and he retrieved it for that reason; in the present case, the record contains no testimony by Smutz regarding either what he thought the object was that he felt during the pat-down or what his reasons were for removing and examining it. Based upon the record before us, it may be that Smutz removed the envelope from defendant's pants pocket out of nothing more than mere curiosity; nothing in this record supports a claim that Smutz removed the envelope from defendant's pants pocket because he believed the object he felt was a weapon and that its removal was necessary for his own protection. Simple curiosity is not a sufficient basis to justify the removal of such an object from a person's clothing.

■■ We decline to speculate about Smutz's motivations, and we hold that in order for an officer to lawfully remove from a person's clothing an object the officer feels during a pat-down search, that officer must believe the object might be a weapon and articulate a basis for that belief. The credibility of that belief, once it has been testified to, is a subject for judicial determination. *Morgan*, 138 Ill. App. 3d at 101-02, 484 N.E.2d at 1293.

■■ We need not concern ourselves with the State's argument that the envelope seized from defendant "could have felt like a weapon." That issue becomes ripe only when the officer involved has first testified *that he thought it was a weapon at the time he felt it*.

This record does not present any claim by Smutz that he thought the object he felt in defendant's pants pocket was a weapon, or that the removal of this object was necessary for his

protection. We thus conclude that Smutz' removal of this object from defendant's pants pocket was a violation of the fourth amendment to the United States Constitution. Accordingly, the trial court erred in denying defendant's motion to suppress this evidence.

In *Morgan*, this court said the following:

> "While the erroneous failure to suppress evidence usually requires only a reversal and remandment for a new trial, here, the required suppression of the cannabis and the evidence of its taking from defendant would destroy any opportunity for the State to prevail on a new trial. Accordingly, we reverse the conviction and sentence but make no order for remandment." (*Morgan*, 138 Ill. App. 3d at 102, 484 N.E.2d at 1294.)

The same analysis is applicable to the circumstances of the present case.

Reversed.

SPITZ and KNECHT, JJ., concur.