NO. 4-98-0077

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

THE PEOPLE OF THE STATE OF ILLINOIS, ) Appeal from

Plaintiff-Appellant, ) Circuit Court of

v. ) Champaign County 

GREGORY A. BOYD, ) No. 97CF1435 

Defendant-Appellee. ) 

) Honorable

) John R. DeLaMar,

) Judge Presid

ing. 

_________________________________________________________________

JUSTICE STEIGMANN delivered the opinion of the court:

In October 1997, the State charged defendant, Gregory A. Boyd, with possession of a substance containing cannabis (more than 2.5 grams but less than 10 grams) and possession of a controlled substance with intent to deliver (1 gram or more but less than 15 grams of a substance containing cocaine) (720 ILCS 550/4(b), 570/401(c)(2) (West 1996)).  In November 1997, defen­

dant filed a motion to suppress the evidence that formed the basis for the cocaine charge against him.  In January 1998, the trial court conducted a hearing on that motion and granted it.  The State appeals, and we reverse and remand with direc­tions.

I.  BACKGROUND

At the January 1998 hearing on defendant's motion to suppress, the parties stipulated to the facts set forth in the police reports, which showed the following.  On the evening of October 15, 1997, Cham­paign police officers Walton and Alvis were on routine patrol when they saw a maroon car fail to com­plete­ly stop at a stop sign.  When the officers tried to catch up with the car, "it accelerated as if the [three] occupants meant to elude" the offi­cers.  The car then pulled into a parking lot and stopped.  Alvis' report indicated that the car's occupants "immedi­ately attempted to exit the vehicle as it stopped," and he and Walton ordered them to remain in the vehicle.  Walton's report indicated as follows:  

"As the vehicle rounded the corner, it hasti­ly pulled into a parking spot.  All the occu­pants immediately jumped out. 

As Officer Alvis and [I] approached the vehicle, we advised the occupants to return to the vehicle.  From their demeanor, and their nervous mannerisms, I was convinced that they intended to flee on foot."  

Walton identified defen­dant as the backseat passen­ger.    

Both Alvis and Walton approached the car.  As Walton came within four feet of the passenger's side of the car, he smelled "the extreme odor of burned cannabis."  (The parties stipulated to Walton's training and ability to identify the smells of both fresh and burning cannabis.)  As Alvis ap­proached the driver's side, he smelled "a strong odor of burnt cannabis." 

Police sergeant Scott Swan and Officer Walker respond­ed to Alvis and Walton's call for assistance.  Walker's report indi­

cated, in relevant part, as follows:

"As I reached the vehicle, I could smell a very strong odor of cannabis [e]mitting from within the vehicle.  As I opened the passen­

ger side back door and asked the passenger [later identi­fied as defendant] to exit[] the vehicle, I smelled a stronger odor of canna­

bis from within the vehicle."

Swan's report indicated that as he approached the car, he "could smell the odor of burnt marijuana."

At Walton's request, Walker asked defendant to get out of the vehicle and began attempting to search him "for any con­

trolled substances."  Defendant got out of the car but refused to place his hands on the car so that Walker could search him.  Walker placed defendant in hand­cuffs to complete the search.  During the search, Walker "located a small plastic baggie con­

tain­ing a green leafy sub­stance" (subsequently determined to be cannabis) in defendant's right sock.  He also located a "plastic baggie" which "contained several other smaller plastic baggies, tied in knots, to secure a[n] off-white in color substance" (subse­quently deter­mined to be crack cocaine) in defendant's left sock.  (This evidence formed the basis for the cocaine posses­sion charge against defendant.)

While the other officers were searching the occupants, Swan searched the car.  He found a "baggie con­taining suspected canna­bis" under the driver's seat.  (This evidence was the basis for the cannabis possession charge against defendant; it is not at issue in this ap­peal.)  

After hearing counsel's arguments and considering the evidence, the trial court granted defendant's motion.  The court found that (1) when the officers approached the car after lawful­

ly stopping it, the occu­pants were still in the car; (2) the offi­cers thus had no need to detain the occupants to determine who was driving; and (3) the officers had no officer safety concerns that authorized them to order defen­dant, who was a passen­ger, to remain in the car.  The court stated, in rele­vant part, as fol­lows:

"It's extremely difficult to resolve these factual matters based on [police] re­

ports.  They are inconsistent in my estima­

tion, inconsistent in some pretty critical aspects, but I will respect the agreements of the parties and do my best.  Now I believe that the law provides this.  Number one, the original stop of the vehicle was quite proper and valid.  ***  With regard to what follows next, there are circumstances under which a police officer who has stopped a vehicle for a traffic violation can order passengers to remain or order passengers to step out, one [of the reasons] is if the officer feels that's necessary for his or her own safety.  That's not advanced as a reason here.  In fact, there is no specific articulable reason ad­vanced here to justify whichever happened.  According to one police officer's report[, the occupants] were told to stay in the car.  According to another [report], they were told to get back in the car, and there is a dif­

ference.  ***  If, in fact, the police ar­

rived at a point where they could clearly identify who the driver was, unless they were for some reason concerned with their own safety, and there is no suggestion that they were, then I believe [defense counsel] is correct; then the passengers had a right to walk away.  ***  However, if, in fact, all of the occupants of the vehicle had already exited the vehicle so that the police could not tell with certainty who the driver was, then, of course, they have every right under [
Terry v. Ohio
, 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868 (1968),] and the codifi­ca­tion of our *** code of crim­inal procedure to stop them and ascer­tain who is the driver.  ***  
Obvi­ously
 
if
 
the
 
occu­pants
 
are
 
still
 
getting
 
out
 
of
 
the
 
vehi­cle
, 
it's
 
pretty
 
obvi­ous
 
who
 
the
 
driver
 
was
 
and
 
the
 
rationale
 
for
 
stopping
 
and
 
de­taining
 
the
 
two
 
passengers
 
can
 
only
 
be
, as I under­stand the case law, 
offi­cer
 
protec­

tion
, 
con­cern
 
for
 
the
 
safety
 
of
 
the
 
officer
.  
Oth­er­wise
, 
they
 
have
 
the
 
right
 
to
 
walk
 
away
.  Unfortunately, it's very difficult to resolve that in these reports because both officers who wrote reports [(Alvis and Walton)] and whose re­ports are not consistent in that regard had an equal oppor­tunity to observe.  They are the two officers who conducted the traf­fic stop and were on the scene.  One of them has the three occupants completely out of the vehicle; the other one has [the occu­

pants] starting to get out and told to stop.  ***  
[T]he
 
burden
 
is
 
on
 
the
 
State
 
to
 
estab­

lish
, under my analysis, 
that
, 
in
 
fact
, 
[de­

fendant]
 
and
 
the
 
other
 
occupants
 
were
 
already
 
out
 
[of]
 
the
 
vehicle
 
so
 
the
 
officers
 
had
 
to
 
stop
 
them
 
to
 
determine
 
who
 
was
 
the
 
driver
, 
since
, 
again
, 
officer
 
safety
 
is
 
not
 
advanced
 
as
 
a
 
reason
 
for
 
this
.  
The
 
State
 
has
 
not
 
met
 
its
 
burden
."  (Emphasis added.)

The trial court thus determined that because the occu­

pants were not yet outside of the car, the officers had no authority to order defendant to remain in the car or prevent him from walking away from the scene.  The court also found that, assum­ing the occu­pants were already out of the car when the officers arrived, the officers had authority to detain the occu­

pants and determine who was driving; however, the smell of burning canna­bis emanating from the car gave the offi­cers proba­

ble cause to search only the car and its driver, but not defen­

dant.    

II.  ANALYSIS

The State argues that the trial court erred by granting defendant's motion to suppress.  We agree.

The trial court's ruling on a motion to suppress is generally entitled to great deference, and this court will not disturb it on review unless we conclude it is against the mani­

fest weight of the evidence.  
People v. Bradley
, 292 Ill. App. 3d 208, 210, 685 N.E.2d 426, 427 (1997).  We fully accept the trial court's factual findings in this case; however, we conclude that the court's decision grant­ing the defendant's motion to suppress was errone­ous as a matter of law.  

In 
People v. Ricksy
, 206 Ill. App. 3d 302, 306-07, 564 N.E.2d 256, 259 (1990), this court wrote the following:

"We suggest the following analytical approach for trial courts to use when decid­

ing motions to suppress evidence.  When, as here, the evidence before the court reveals a series of interactions between the police and a person who is being stopped or searched, the court's analysis should be as finely divided as possible to distinguish among the various stages of that interaction."

Following the analytical approach we suggested in 
Ricksy
, we conclude that the trial court's factual findings (based on the stipu­lated evi­dence pre­sent­ed at the hearing on defendant's motion to suppress) raise the follow­ing distinc­tive questions:  (1) Did the police officers lawfully stop the maroon car?  (2) Assuming that stop was lawful, did the officers lawfully order defendant (a passenger) to remain in the car--and subse­quently to exit the car?  (3) Assuming those orders were lawful, did the officer lawfully search defen­dant?  We will analyze these issues in turn.    

Initially, we note that defendant concedes that Alvis and Walton's initial stop of the car was valid.  He also concedes that the officers could lawfully order defendant to exit the vehicle.  See 
Maryland v. Wilson
, 519 U.S. ___, ___, 137 L. Ed. 2d 41, 48, 117 S. Ct. 882, 886 (1997) (a police officer may, as a matter of course, order passengers of a lawful­ly stopped vehicle to exit the vehicle).

A.  Did the Officers Lawfully Order Defendant 

To Remain in the Car? 

In 
Wilson
, the United States Supreme Court addressed the question of the authority of a police officer who, as here, has lawfully stopped a vehicle to order the passengers to get out of the car.  The Court wrote the following:

"[In 
Pennsylvania v. Mimms
, 434 U.S. 106, 54 L. Ed. 2d 331, 98 S. Ct. 330 (1977), the Court ex­plained] that '[t]he touch­stone of our analy­sis under the Fourth Amend­ment is always "the reason­able­ness in all the circum­

stances of the particu­lar governmental inva­

sion of a citizen's personal security,"' [citations], and that reasonableness `depends "on a balance between the public interest and the individual's right to personal security free from arbi­trary interference by law offi­

cers,"' [cita­tions].  ***

* * *

We must there­fore now de­cide wheth­er the rule of 
Mimms
 [in which the Court held that a police officer may, as a matter of course, order the driver of a law­fully stopped car to exit his vehi­cle] ap­plies to passengers as well as to drivers.  On the public interest side of the balance, the same weighty inter­

est in officer safety is pres­ent regardless of whether the occupant of the stopped car is a driver or a passen­ger.  Regrettably, traf­

fic stops may be dan­gerous encounters.  In 1994 alone, there were 5,762 officer assaults and 11 officers killed dur­ing traffic pur­

suits and stops.  [Cita­tion.]  In the case of passengers, the danger of the officer's standing in the path of oncoming traffic would not be present except in the case of a passenger in the left rear seat, but the fact that there is more than one occupant of the vehicle increases the possi­ble sources of harm to the officer.

On the personal liberty side of the bal­

ance, the case for the passengers is in one sense stronger than that for the driver.  There is probable cause to believe that the driver has committed a minor vehicular of­

fense, but there is no such reason to stop or detain the passengers.  But as a practical matter, the passengers are already stopped by virtue of the stop of the vehicle.  The only change in their circumstances which will result from ordering them out of the car is that they will be outside of, rather than inside of, the stopped car.  Outside the car, the pas­sengers will be denied access to any possible weapon that might be concealed in the interi­or of the passenger compartment.  It would seem that the possibility of a vio­

lent en­counter stems not from the ordinary reaction of a motorist stopped for a speeding viola­tion, but from the fact that evidence of a more serious crime might be uncovered dur­

ing the stop.  And the motivation of a pas­

senger to employ violence to prevent appre­

hension of such a crime is every bit as great as that of the driver.  

We think that our opinion in 
Michigan v. Summers
, 452 U.S. 692, 69 L. Ed. 2d 340, 101 S. Ct. 2587 (1981), offers guidance by analo­

gy here.  There the police had obtained a search war­rant for contraband thought to be located in a residence, but when they arrived to execute the warrant they found Summers coming down the front steps.  The question in the case depended `upon a determination whether the officers had the authority to require him to re[]enter the house and to remain there while they conducted their search.'  [Cita­tion.]  In holding as it did, the Court said:

'Although no special danger to the police is suggested by the evidence in this record, the execution of a warrant to search for narcotics is the kind of transaction that may give rise to sudden violence or frantic efforts to conceal or de­

stroy evidence.  The risk of harm to both the police and the occu­

pants is minimized if the officers routinely exercise unquestioned command of the situation.'  [Cita­

tion.]

In summary, danger to an officer from a traffic stop is likely to be greater when there are passengers in addition to the driv­

er in the stopped car.  While there is not the same basis for ordering the passengers out of the car as there is for ordering the driver out, the additional intrusion on the passenger is minimal.  We therefore hold that an officer making a traffic stop may order passengers to get out of the car pending completion of the stop."  
Wilson
, 519 U.S. at ___, 137 L. Ed. 2d at 46-48, 117 S. Ct. at 884-86,

Thus, 
Wilson
 stands for the proposition that a police officer who has made an otherwise lawful stop of a vehicle may--

without
 
more
--order passengers to get out of the car.  The situa­

tion pre­sent­ed in this case differs only slight­ly--namely, defendant, a passen­ger, was ordered to remain in the lawful­ly stopped vehicle.  

On the public interest side of the balance, we conclude that the "same weighty interest in officer safety" is present regardless of whether the officer orders a passenger who is seated in a lawfully stopped vehicle to get out of the car or remain in the car.  See 
Wilson
, 519 U.S. ___, 137 L. Ed. 2d 41, 117 S. Ct. 882.  The officer's concern for his safety is none­the­

less heightened by the presence of more than one occupant in the vehi­cle.    

On the personal liberty side of the balance, we con­

clude that the intrusion on the passenger who is ordered to remain in a lawfully stopped car is no more burden­some--and perhaps less so--than the passenger who is ordered to get out of the car.  In particular, we note that the passenger who is ordered to remain in the vehicle will not be exposed to either the elements or the full view of the public.  Consistent with the Supreme Court's holding in 
Wilson
, we hold that a police officer may lawfully order passengers in a lawfully stopped vehicle to remain in the vehicle.  To hold otherwise could lead to anomalous results, and we believe it would be illogical to allow a police offi­cer to order a passen­ger out of a lawfully stopped vehi­cle, but not to allow the officer to order such a passen­ger to remain in the vehi­cle.        

In so holding, we note that we do not have before us the ques­tion of whether a police officer may forcibly detain a passenger for the entire duration of the traffic stop.  Defendant here was not subjected to a lengthy detention based on the lawful stop­ of the car; instead, defendant was searched and formally arrested once the offi­cers ap­proached the car and smelled burning canna­bis (which occurred moments after the officers told defen­

dant to remain in the car).  See 
Rawlings v. Kentucky
, 448 U.S. 98, 111 & n.6, 65 L. Ed. 2d 633, 645-46 & n.6, 100 S. Ct. 2556, 2564 & n.6 (1980) (a search may be conducted immediately prior to the arrest and need not take place subsequent to it).   

Even assuming that defendant and the other occupants of the car had already gotten out of the car and begun to walk away when the offi­cers exited their patrol car, we none­the­less hold--

consis­tent with the Supreme Court's holdings in 
Wilson
 and 
Sum­

mers
 (
Michigan v. Summers
, 452 U.S. 692, 69 L. Ed. 2d 340, 101 S. Ct. 2587 (1981))--that a police officer may lawful­ly order passen­gers who have exited a lawful­ly stopped vehicle to get back in the car.  Such a situa­tion is comparable to the situation pre­

sent­ed in 
Summers
, in which officers execut­ing a search warrant for narcot­ics in a residence found the defendant walking down the front steps of the resi­dence.  
Sum­mers
, 452 U.S. at 693, 69 L. Ed. 2d at 343-44, 101 S. Ct. at 2589.  The Supreme Court held that the officers had authority to require the defen­dant to reenter the residence and remain there during the search.  In so holding, the Supreme Court wrote the follow­ing:  "The risk of harm to both the police and the occu­pants is mini­mized if the officers rou­tinely exercise unques­tioned command of the situa­

tion."  
Sum­mers
, 452 U.S. at 702-03, 69 L. Ed. 2d at 350, 101 S. Ct. at 2594.  The same risk of harm and need to exercise "unques­

tioned com­mand of the situa­tion" are present in a situa­tion in which an offi­cer lawful­ly stops a vehicle and the occu­pants immedi­ate­ly get out of the car.

We note that we are not presented with--and there­fore do not ad­dress--the situa­tion in which a passen­ger has already walked away from a lawful­ly stopped vehicle prior to the officer's ordering him to return to the scene.  The police reports here indi­cate--at most--that (1) Walton saw defen­dant and the other occu­pants jump out of the car as soon as it stopped and begin walking away; (2) Walton be­lieved the occu­pants "in­tended to flee on foot"; and (3) the officers immediate­ly ordered the occupants to get back in the car.   

         B.  Did the Police Officer Lawfully Search Defendant?

Probable cause exists when "facts exist that would lead a reasonable person standing in the shoes of the police officers to conclude that a crime has been committed and the defendant was the person who committed the crime."  
People v. Robinson
, 167 Ill. 2d 397, 405, 657 N.E.2d 1020, 1025 (1995).  The totality of the circumstances analysis must be based upon both factual and commonsense considerations.  
People v. Adams
, 131 Ill. 2d 387, 396-97, 546 N.E.2d 561, 565 (1989).

In 
People v. Stout
, 106 Ill. 2d 77, 477 N.E.2d 498 (1985), a police officer testified that he detected the odor of burning cannabis in a vehicle he had just stopped for a traffic violation.  Without any further basis, he searched the driver of that car and found a vial of cocaine.  On the defendant's motion, the trial court suppressed the cocaine on the ground that the odor of burning cannabis coming from the defendant's vehicle did not give the arresting officer sufficient probable cause to conduct a warrantless search of the driver.  
Stout
, 106 Ill. 2d at 81-82, 477 N.E.2d at 500.  The appellate court af­firmed the trial court's suppression of the cocaine, but the supreme court re­versed and wrote the following:

"Police officers often must act upon a quick appraisal of the data before them, and the reasonableness of their conduct must be judged on the basis of their responsibility to prevent crime and to catch criminals.

* * *

This court has held that 
distinctive
 
odors
 
can
 
be
 
persuasive
 
evidence
 
of
 
probable
 
cause
.  
A
 
police
 
officer's
 
detection
 
of
 
con­

trolled
 
substances
 
by
 
their
 
smell
 
has
 
been
 
held
 
to
 
be
 
a
 
permissible
 
method
 
of
 
establish­

ing
 
probable
 
cause
.  ***

***  Based on the particular facts of this case, including the officer's experience and training in the detection of controlled substances, we find that probable cause ex­

isted to justify the warrantless search."  (Emphasis added.)  
Stout
, 106 Ill. 2d at 86-

87, 477 N.E.2d at 502-03.    

In 
People v. Strong
, 215 Ill. App. 3d 484, 490, 574 N.E.2d 1271, 1275 (1991), this court held that a police offi­cer's detection of the odor of burning cannabis emanating from a lawful­ly stopped vehicle provided proba­ble cause to search both the driver and the car.  See also 
People v. Houldridge
, 117 Ill. App. 3d 1059, 1064, 454 N.E.2d 769, 772 (1983) (where this court held that an officer's detection of the odor of cannabis smoke emanat­ing from a lawful­ly stopped vehicle provided probable cause for a warrant­less search of the car).  

Consistent with the holdings of 
Stout
, 
Strong
, and 
Houldridge
, we hold that the officers' detection of the odor of burning cannabis emanating from the lawful­ly stopped maroon car provided the officers with probable cause to search defen­dant, who was a passen­ger in the car.  To hold otherwise would lead to the illogi­cal conclusion that when a trained police officer detects the odor of a burning controlled substance emanating from a lawful­ly stopped vehicle he can search only the driver and not the other occupants of the car even though the smell was emanat­

ing from the enclosed space of the vehicle in which 
all
 occupants were pres­ent.  See 
People v. Pittman
, 216 Ill. App. 3d 598, 603, 575 N.E.2d 967, 970 (1991) ("If two or more persons share the immedi­ate and exclusive control or share the intention and the power to exercise control over a thing, then each person has possession").   

In support of our holding, we note that other courts have held that a police officer's detection of the odor of burning canna­bis emanating from a lawfully stopped vehicle gave the officer probable cause to search and arrest all occupants of the vehicle for possession of a controlled substance.  See 
Brunson v. State
, 327 Ark. 567, 572, 940 S.W.2d 440, 442 (1996) (officer's detection of the odor of burning cannabis or its smoke emanat­ing from the vehicle gave the officer reasonable cause to believe that the occupants had been or were committing an offense inside the vehicle); 
State v. Hammond
, 24 Wash. App. 596, 600, 603 P.2d 377, 380 (1979) (odor of burning cannabis gave officer probable cause to arrest backseat passenger for possession); see also 
State v. Mitch­ell
, 167 Wis. 2d 672, 684, 482 N.W.2d 364, 368-69 (1992) (officer's detec­tion of burning canna­bis and smoke emanat­ing from the vehicle together gave the officer proba­ble cause to believe that the driver, his passenger, or both had been smoking, and thus pos­sessing, canna­bis).

III.  CONCLUSION

In closing, we commend the trial court for employing the analyt­ical approach this court suggested in 
Ricksy
 during the hear­ing on defendant's motion to sup­press, which we found help­

ful. 

For the reasons stated, we reverse the trial court's judgment granting defendant's motion to suppress, and we remand for further proceedings consistent with the views expressed herein.   

Reversed and remanded with directions.  

GARMAN, P.J., and COOK, J., concur.