274

*In re* F.R., a Minor (The People of the State of Illinois, Petitioner-Appellee, v. F.R., a Minor, Respondent-Appellant).

First District (5th Division)   No. 1—88—2159

Opinion filed January 18, 1991.

Randolph N. Stone, Public Defender, of Chicago (Stephen L. Richards, Assistant Public Defender, of counsel), for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb, Kenneth T. McCurry, and Sharon Jefferson, Assistant State's Attorneys, of counsel), for the People.

JUSTICE GORDON delivered the opinion of the court:

Respondent, the minor F.R., was charged with possession of 3.95 grams of Cannabis sativa in violation of section 4 of the Cannabis Control Act (Ill. Rev. Stat. 1987, ch. 56½, par. 704). The respondent filed a pretrial motion to quash arrest and suppress evidence, which was denied. Following an adjudicatory hearing, the trial court entered a finding of delinquency. The respondent was declared a ward of the court and was placed on probation for 18 months, with 30 days in custody. On appeal, respondent contends that the trial court erred in denying his motion to quash arrest and suppress evidence. For the following reasons, we reverse the finding of delinquency.

FACTS

At the hearing on the motion to suppress, respondent testified on his own behalf. He said that on March 7, 1988, at approximately 10 p.m., he was standing at the intersection of Division and Winchester Streets in Chicago when two police officers approached him. He testified that the officers asked him why he was standing there, and then searched his pocket and removed something. On cross-examination, respondent said he knew that a lot of drug dealings occur on that corner. He denied that when the police stopped him, he had walked up to a car that had stopped at the intersection.

Officer Ralph Vega, testifying on behalf of the State, said that the intersection of Division and Winchester is a known drug trafficking

area and that he has observed drug transactions occurring at that intersection approximately 25 times. He testified that in the six months before the hearing, he had made about a dozen arrests there. He explained that, from his experience, these transactions involve a car that pulls up to a certain corner. The driver of that car then motions to a person standing at the corner, after which that person approaches the car and the driver asks him "for an amount." Then, the person gives the driver a package and money is exchanged.

Officer Vega further testified that he was assigned to the intersection of Division and Winchester on March 7, 1988. He and his partner arrived at the intersection at 10:10 p.m. They were in uniform and driving a marked car. The officer testified that he observed the respondent on the corner to his left and a parked car with someone in the driver's seat on the corner to his right. The driver of the car waved to respondent, and respondent walked over to the car and began talking to him. Officer Vega testified that he and his partner were then right by the corner, approximately 25 feet from the car, at which time respondent saw them and immediately walked away from the vehicle. The officers then exited their car and stopped him. Officer Vega testified that they asked respondent what he was doing by the car, but he did not answer. Thereafter, a pat search was conducted, at which time, the officer testified, he felt a bulge in the front of respondent's pants, close to the belly button. The officer then removed a crumpled up potato chip bag from inside respondent's pants. Inside the potato chip bag were four smaller bags that contained a crushed green plant matter, later found to be marijuana.

Upon cross-examination, Officer Vega said he did not see respondent exchange anything with the car's driver. He testified that he squeezed the bulge that he had felt in respondent's pants and determined it was not solid, nor did it have any sharp edges.

After hearing this testimony, the trial court denied respondent's motion to quash arrest and suppress evidence, saying that the search of respondent was proper because the officer had probable cause to believe a crime was in progress. The court also said that because a crumbled-up potato chip bag could have felt like "some kind of object that could possibly be a weapon," "it [the search] properly meets" the requirements of *Terry v. Ohio* (1968), 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868.

At the adjudicatory hearing, Officer Vega restated his testimony given at the motion to suppress hearing. On cross-examination, he said that he did not hear the conversation between respondent and the driver, nor did he see either of them exchange anything. He also

said that more juveniles congregate at this particular corner than at other drug trafficking corners in the area. Officer Vega testified that when he retrieved the potato chip bag, he thought there was a possibility the bag contained drugs. While he did not think there was a gun in the bag, he testified that he believed that there possibly could have been some sort of weapon in the bag. The prosecution then successfully objected to defense counsel's question regarding what type of weapon Officer Vega thought may have been in the bag.

At the conclusion of evidence, the trial court found the respondent was in possession of 3.95 grams of marijuana. The court denied respondent's motion for a new hearing and entered a finding of delinquency. Respondent was declared a ward of the court and was placed on probation for 18 months, with 30 days in custody. After the parties submitted briefs on appeal, respondent made a motion to strike the State's brief, on the grounds that the State waived any argument that the search was lawful under *Terry v. Ohio* by successfully objecting to the admission of evidence as to what kind of weapon Officer Vega thought was in the bag. That motion was taken with this case.

OPINION

Respondent contends the trial court erred in allowing the potato chip bag into evidence at the adjudicatory hearing because there was no probable cause for arrest and therefore the evidence was not properly seized in a search incident to an arrest. Moreover, respondent argues, Officer Vega's stop and subsequent pat search of respondent did not sufficiently comply with the requirements set forth in *Terry* to justify the ensuing search and seizure under those standards.

In its brief, the State urged that probable cause for arrest existed, but its primary justification for admitting the evidence was that the stop and subsequent search were valid under *Terry*. Moreover, at oral argument, the State only asserted its *Terry* argument. Nevertheless, because the State did not formally withdraw its contention that probable cause existed, the grounds upon which the trial court predicated its ruling, we will briefly address that issue.

■ The reviewing court should not disturb the trial court's finding on a motion to suppress unless that finding is shown to be manifestly erroneous. (*People v. Waddell* (1989), 190 Ill. App. 3d 914, 920, 546 N.E.2d 1068, 1073.) In Illinois, a peace officer may arrest a person when he has reasonable grounds to believe that the person is committing or has committed an offense. (Ill. Rev. Stat. 1989, ch. 38, par. 107—2(c).) "Reasonable grounds" has the same substantive meaning as "probable cause." (*People v. Wright* (1974), 56 Ill. 2d 523, 528, 309

N.E.2d 537, 540.) If probable cause for an arrest exists and evidence is seized in a search incident to that arrest, then that evidence is admissible.

█ Respondent contends that the circumstances are not sufficient to support a reasonable inference that respondent had committed or was committing a crime, pursuant to the standards set forth in *Sibron v. New York* (1968), 392 U.S. 40, 20 L. Ed. 2d 917, 88 S. Ct. 1889. We agree that *Sibron* controls.

In *Sibron*, a police officer accosted the defendant after seeing him talk with known drug addicts over an eight-hour period. An ensuing search of the defendant's pockets revealed heroin. The United States Supreme Court reversed the defendant's conviction, saying that the officer had neither probable cause to arrest the defendant nor a reasonable suspicion to stop him.

The Court reasoned that the officer was not acquainted with the defendant and had no information concerning him. The officer merely saw the defendant talking to several known drug addicts over an eight-hour period. The Court emphasized the fact that the officer had no knowledge of the content of these conversations and that he saw nothing pass between the defendant and the addicts. The Court held that nothing resembling probable cause existed until after the search had turned up the envelopes of heroin, and that "[i]t is axiomatic that an incident search may not precede an arrest and serve as part of its justification." *Sibron*, 392 U.S. at 62-63, 20 L. Ed. 2d at 934-35, 88 S. Ct. at 1902.

Here, as in *Sibron*, no evidence was introduced that the officer had any information concerning either respondent or the driver of the automobile. He merely saw the two having a conversation at a street corner in a drug trafficking area. The officer had no knowledge of the content of the conversation, nor did he see anything pass between respondent and the driver. The officer could not have made a reasonable inference that respondent was committing or had committed a crime. Therefore, there was not probable cause to arrest respondent at that time and the trial court erred in so ruling.

The State contends that even if probable cause did not exist when the officers observed respondent talking with the driver of the parked car, the evidence was properly obtained pursuant to a legitimate stop and frisk under the requirements set forth in *Terry v. Ohio* (1968), 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868. The State argues that when the officer removed the potato chip bag from respondent's pants pursuant to the pat search, he then had probable cause to ar-

rest respondent and examine the contents of the bag incident to that arrest.

Respondent counters that: (1) Officer Vega did not have a basis for a reasonable suspicion that respondent was selling drugs to justify his stop of respondent; (2) even if reasonable suspicion existed, the officer had no reason to believe respondent was armed and dangerous to validate a pat search of respondent; (3) even if Officer Vega was justified in searching respondent, he exceeded the scope of that search by removing the potato chip bag from respondent's pants; and (4) even if the officer could legitimately remove the bag from respondent's pants, he was not justified in opening the bag and examining its contents.

■ Under *Terry*, an objective standard is used to determine whether a stop is reasonable. The facts available to the officer at the moment of the stop must lead "a man of reasonable caution" to believe the stop was appropriate. *Terry*, 392 U.S. at 21-22, 20 L. Ed. 2d at 906, 88 S. Ct. at 1880; *People v. Watson* (1986), 145 Ill. App. 3d 492, 496, 495 N.E.2d 1153, 1156.

Illinois has codified *Terry* in section 107—14 of the Illinois Code of Criminal Procedure of 1963, which provides that a peace officer, after having identified himself as such, may lawfully stop any person in a public place for a reasonable period of time when he reasonably infers from all the circumstances that the individual is committing, about to commit or has committed an offense, and may demand the name and address of the person and an explanation of his actions. Ill. Rev. Stat. 1989, ch. 38, par. 107—14.

■ Officer Vega testified that, from his experience, the intersection of Division and Winchester is a known drug trafficking area. He said he has seen many drug transactions take place there and had made approximately a dozen arrests on that corner in the six months before trial. He also said more juveniles congregate there than at other corners. In describing such transactions, the officer testified that these drug transactions involve a common pattern in which an automobile pulls up to a corner and the driver then motions to the drug vendor, who is standing there. At that time, the vendor walks over to the car and the driver asks him for an amount. The vendor and the driver then mutually exchange a package containing drugs for money.

Officer Vega observed respondent, a minor, being waved over to a car which had stopped at the intersection of Division and Winchester shortly after 10 p.m. Respondent then walked over to the car and began talking with its driver. The officer testified that when respondent

saw the officer and his partner, he immediately walked away from the car. The officer said he heard nothing of the conversation between respondent and the driver, nor did he see anything exchanged, and that respondent's back was to him. In light of the fact that, from Officer Vega's experience, he knew drug transactions occurred at this corner with juveniles walking up to parked cars, the events of this case could lead him to reasonably suspect from all the circumstances that the respondent was committing or was about to commit a crime. Although these facts were not sufficient to justify an arrest, they were sufficient to justify the officer's stop of respondent under section 107—14. See *People v. Holman* (1987), 157 Ill. App. 3d 764, 510 N.E.2d 1139.

■ Upon finding that Officer Vega legitimately stopped respondent, we must now determine the legality of the ensuing pat search. In *Terry*, the Court said the right to frisk does not follow automatically from the right to stop. If a reasonably prudent man in the same situation would be warranted in the belief that his safety or the safety of others is in danger, then a frisk would be proper. (*Terry*, 392 U.S. at 27, 20 L. Ed. 2d at 909, 88 S. Ct. at 1883.) In Illinois, section 108—1.01 of the Illinois Code of Criminal Procedure provides that when an officer has stopped a person for temporary questioning pursuant to section 107—14, and he reasonably suspects that he or another is in danger of attack, he may search the person for weapons. If the officer discovers a weapon, he may take it until the completion of questioning, after which he shall either return the weapon, if lawfully possessed, or arrest the person. (Ill. Rev. Stat. 1989, ch. 38, par. 108—1.01.) Respondent argues that Officer Vega did not show any specific and articulable facts that would lead to such a reasonable suspicion. We agree.

In *People v. Galvin* (1989), 127 Ill. 2d 153, 535 N.E.2d 837, the Illinois Supreme Court affirmed the granting of a motion to suppress, holding that while the initial stop of the defendant was valid, the subsequent frisk was not. The court said that while the appropriate test for deciding the validity of a frisk is an objective one, an officer's testimony as to his subjective feelings is one of the factors which may be considered in the totality of the circumstances known to the officer at the time of the frisk. (*Galvin*, 127 Ill. 2d at 168, 535 N.E.2d at 843.) The police officer in *Galvin* specifically testified that he did not think he was in danger or that defendant was armed. The court said that although the officer testified that he searched defendant in order to protect his own safety, "[he] was never asked to specifically state what reasons existed which would lead a prudent person to reasonably believe that in the circumstances which existed at the time of the

search, an officer would be warranted in the belief that his safety or that of others was in danger." *Galvin*, 127 Ill. 2d at 168-69, 535 N.E.2d at 844.

■ At no time during the hearing on the motion to suppress or at the adjudicatory hearing in this case did the officer testify that, prior to the pat search, he believed respondent was armed. Moreover, unlike the facts in *Galvin*, the officer never even testified that he conducted a pat search of respondent in order to protect his own safety. In addition, no evidence was introduced showing that respondent made any furtive or threatening gestures upon being stopped by Officer Vega and his partner, nor did he admit any wrongdoing when questioned by the officers. The record is devoid of any other facts which would provide a basis to reasonably invoke a protective search. Given the totality of the circumstances at the time of the pat search, we cannot find that, as required by *Terry*, a reasonably prudent person would be warranted in the belief that his safety or that of others was in danger. Therefore, the pat search of respondent was not lawfully warranted.

■ Moreover, even if a protective pat search would have been justified under these circumstances, removal of the bag would still require the officer to have had reasonable grounds to suspect the bulge in respondent's pants was a weapon. Respondent contends that no such grounds exist. We agree.

In support of his contentions, respondent relies on *People v. Morgan* (1985), 138 Ill. App. 3d 99, 484 N.E.2d 1292. In *Morgan*, the fourth appellate district reversed defendant's conviction for possession of cannabis, holding that the trial court erred in denying defendant's motion to suppress. In that case, a police officer observed defendant walking in a residential area primarily occupied by college students, who were likely to have been away on vacation at the time. Because the officer knew the area had a high incidence of burglaries when the students were away and defendant looked suspicious, he stopped defendant, questioned him about where he was going and asked him for identification.

As the officer was returning defendant's identification, he noticed a six- to eight-inch bulge in the front of defendant's jacket. The officer told defendant he could go, but then asked him what was underneath his jacket. When defendant took a step backward and said it was nothing illegal, the officer frisked him. The officer testified the bulging object felt like a "hard, cylindrical object," which he thought may be a weapon. When he took the object out of defendant's jacket,

it turned out to be a bag of marijuana. *Morgan*, 138 Ill. App. 3d at 101, 484 N.E.2d at 1293.

The court held that no grounds existed which would justify the officer's belief that he was likely to be attacked by defendant, because the officer had told defendant he could leave, and there was no indication that defendant was likely to attack the officer before doing so. The court also did not believe that a bag of marijuana could produce a bulge in defendant's jacket resembling a weapon. *Morgan*, 138 Ill. App. 3d at 101-02, 484 N.E.2d at 1293.

The State contends that *People v. Day* (1990), 202 Ill. App. 3d 536, 560 N.E.2d 482, rather than *Morgan*, is the controlling case. In *Day*, an Illinois State Trooper stopped defendant's car for speeding and subjected him to a *Terry* frisk. During the frisk, the officer noticed a small rectangular object in defendant's right front pants pocket. The object was about 1½ inches in length and about a quarter-inch thick. The officer testified that he believed the object could have been a "razor blade wrapped up in something." The officer then removed the object from defendant's pocket. It turned out to be a small, white envelope, which he described as a "druggist fold," containing cocaine. *Day*, 202 Ill. App. 3d at 540, 560 N.E.2d at 485.

Defendant's motion to suppress was denied by the trial court. In affirming that decision, the Fourth District Appellate Court held that it was reasonable for the trial court to objectively determine that a piece of paper could be folded in such a way as to produce a tactile sensation similar to that of a razor blade. The court distinguished, but did not repudiate, its decision in *Morgan*, where it held that an ordinary bag of marijuana was not likely to produce a bulge resembling a weapon. *Day*, 202 Ill. App. 3d at 545, 560 N.E.2d at 488.

As in *Morgan* and unlike the facts in *Day*, the object the officer felt in the instant case was not solid and had no sharp edges. It is not reasonable to believe that this object, a soft, crumpled-up potato chip bag containing packets of marijuana, could produce tactile sensations similar to those of a weapon. In fact, the officer did not testify to any tactile sensations even remotely consistent with the presence of a weapon, as was the case in *Morgan*, where the officer testified he felt a hard, cylindrical object. Moreover, unlike the facts in *Day*, the officer in this case was precluded by the State's objection from identifying what type of weapon he believed could possibly have been present in the potato chip bag. Consequently, even if the pat search had been valid, there would have been no justification for removing the object from the respondent's pants while doing a protective search for weapons.

While Officer Vega's stop of respondent complied with Section 107—14 of the Illinois Code of Criminal Procedure, the subsequent pat search and the officer's removal of the potato chip bag from respondent's pants were not valid under the requirements set forth in *Terry v. Ohio.* Therefore, we need not discuss whether the officer was justified in examining the bag's contents. Also, because we now hold that the officer's pat search of respondent did not substantively satisfy the standards of *Terry,* we need not address respondent's contention that the State waived its argument that the search was lawful under that case.

Respondent demands an outright reversal without remand. The State has not interposed a request for remand in the event of a reversal. It is apparent that the State will be unable to prove its charges unless the narcotics found on respondent were properly admitted into evidence. With the required suppression of that evidence, the State would have no opportunity to prevail on a new trial. Accordingly, for all the reasons set forth, the finding of delinquency by the circuit court of Cook County is reversed.

Reversed.

LORENZ, P.J., and MURRAY, J., concur.