# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

**People v. Petty, 2012 IL App (2d) 110974**

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. CHRISTOPHER A. PETTY, Defendant-Appellant. |
| District & No. | Second District<br>Docket No. 2-11-0974 |
| Filed | December 12, 2012 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | Since the investigatory stop that resulted in the discovery of cannabis in defendant's pocket was based on an officer's observation of an innocuous encounter between the drivers of two vehicles and not a reasonable articulable suspicion that defendant was engaged in criminal activity, his conviction for unlawful possession of cannabis with intent to deliver was reversed. |
| Decision Under Review | Appeal from the Circuit Court of Du Page County, No. 09-CM-6600; the Hon. Ronald D. Sutter, Judge, presiding. |
| Judgment | Reversed. |

| Counsel on Appeal | Thomas A. Lilien and Fletcher P. Hamill, both of State Appellate Defender's Office, of Elgin, for appellant. |
| | |
| | Robert B. Berlin, State's Attorney, of Wheaton (Lisa Anne Hoffman, Assistant State's Attorney, and Lawrence M. Bauer and Matthew J. Schmidt, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |

| Panel | JUSTICE SCHOSTOK delivered the judgment of the court, with opinion. Presiding Justice Burke and Justice Jorgensen concurred in the judgment and opinion. |

## OPINION

¶ 1    Following a stipulated bench trial, the defendant, Christopher A. Petty, was convicted of possession of cannabis with intent to deliver (720 ILCS 550/5(b) (West 2008)) and sentenced to one year of conditional discharge. On appeal, the defendant argues that the trial court erred in denying his pretrial motion to suppress the evidence. In that motion, the defendant alleged that police officers had conducted an investigatory stop, which resulted in the discovery of the cannabis, without having a reasonable articulable suspicion that he was engaged in criminal activity. We reverse.

¶ 2    On November 16, 2009, the defendant was charged by misdemeanor complaint with possession of cannabis with intent to deliver. The complaint alleged that on November 13, 2009, the defendant possessed between 2.5 and 10 grams of cannabis and intended to deliver it to another. On October 22, 2010, the defendant filed a pretrial motion to suppress the evidence. A hearing was held on the motion on May 2, 2011.

¶ 3    At the hearing, Elmhurst police officer Kenneth Lafin testified that on November 13, 2009, at about 7 p.m., he was on patrol with Officer Jeff Kucera, in an unmarked vehicle, near the intersection of North Avenue and Route 83. They noticed a teal-colored Pontiac backed into a parking space at a gas station. A Cadillac pulled into the gas station and drove up next to the Pontiac, driver's door to driver's door. The vehicles contained no occupants other than the drivers. The drivers of both vehicles exited their cars, approached each other, engaged in a hand-to-hand exchange of some unknown object or objects, and quickly got back into their vehicles. The defendant was driving the Cadillac. The exchange took about 10 seconds and Officer Lafin did not observe any conversation between the two drivers. After they witnessed the exchange, he and Officer Kucera pulled into the gas station parking lot. At that point, the defendant had already pulled out of the parking space and begun to

move toward the exit of the gas station. Officer Lafin testified specifically as follows:

> "Well, Mr. Petty had already started to back out and began to exit the lot. We pulled up–as he was headed toward the south exit, we pulled up, I guess it would be his–well, not guess, it would be his rear driver's quarter panel behind his door almost to a T with him pointing to the exit, us facing the rear of his car."

Officer Lafin further testified that the Cadillac "was pointing out to leave the parking lot, and it stopped when Officer Kucera pulled behind it." Ultimately, Officer Lafin approached the Pontiac and Officer Kucera approached the Cadillac. Officer Lafin testified that he had received training in identifying drug transactions. His most recent training was several months prior to the stop at issue. He had learned that quick hand-to-hand transactions, with very little or no conversation, are consistent with drug transactions.

¶ 4    Officer Kucera testified that he was on patrol with Officer Lafin in an unmarked squad car near the intersection of North Avenue and Route 83 at approximately 7 p.m. on November 13, 2009. Officer Kucera was the driver. Officer Kucera described the same hand-to-hand exchange between the drivers of the Pontiac and the Cadillac. He did not see what was exchanged. He drove the unmarked squad car into the gas station parking lot as the defendant began to back out of his parking space. Officer Kucera testified that when he pulled into the gas station:

> "[The squad car] was in the front of both vehicles, but I was back approximately a car length, because as I pulled up and activated the lights, Mr. Petty pulled in front of my vehicle and began to pass my vehicle towards Route 83."

Officer Kucera reiterated that the defendant "had backed out, put the car in drive, and then begun to pull forward." At that point, Officer Kucera activated the lights on the squad car. The squad car was at a right angle to the Cadillac. Officer Kucera testified:

> "My car was not in front of Mr. Petty's car. Mr. Petty's car actually had passed the front of my vehicle, and I had to actually yell at him to stop, which he did."

Officer Kucera exited the squad car and approached the defendant. He identified himself as an Elmhurst police officer and asked the defendant to get out of the car. He told the defendant that he believed that he had just witnessed a drug transaction and he asked the defendant if he had anything illegal on his person. The defendant stated that he had two bags of cannabis in his front left pocket.

¶ 5    Following arguments by counsel, the trial court denied the defendant's motion to suppress. The trial court noted that in *People v. Ocampo*, 377 Ill. App. 3d 150 (2007), in which this court determined that the police did not have reasonable suspicion to conduct an investigatory stop, the officers were not able to see the exchange. The trial court further noted that, in *People v. Morales*, 221 Ill. App. 3d 13 (1991), this court had found reasonable suspicion where officers observed the defendant exchange something with another person, the defendant and the other person immediately separated when the officers arrived, and the defendant was holding his hands in a cupped manner close to his body. The trial court found that, in this case, the officers had witnessed an exchange. Further, Officer Lafin testified regarding his training in hand-to-hand drug transactions and both officers testified that they believed they had witnessed a drug transaction. Based on the foregoing, the trial court found

-3-

that the officers' suspicions were reasonable.

¶ 6        The cause proceeded to a stipulated bench trial. The parties stipulated that, pursuant to a police report prepared after the defendant's arrest, the defendant admitted to police that he had sold cannabis to the individual in the Pontiac. The parties also stipulated to a laboratory report that indicated that the suspected cannabis found in the defendant's pocket tested positive for cannabis. The trial court found the defendant guilty of possession of cannabis with intent to deliver and sentenced the defendant to one year of conditional discharge. The defendant filed a timely notice of appeal.

¶ 7        The defendant's sole contention on appeal is that the trial court erred in denying his motion to suppress. In his motion to suppress, the defendant alleged that the discovery of the cannabis occurred during an investigatory stop that was not supported by a reasonable articulable suspicion of criminal activity. In reviewing a ruling on a motion to suppress, we afford great deference to a trial court's factual findings and will not reverse them unless they are contrary to the manifest weight of the evidence. *People v. Luedemann*, 222 Ill. 2d 530, 542 (2006). Nonetheless, as a reviewing court we are free to draw our own legal conclusions based on the facts. *Id.* Accordingly, we review *de novo* the ultimate legal ruling granting or denying the motion. *Id.*

¶ 8        The fourth amendment to the United States Constitution and the Illinois Constitution prohibit searches and seizures only where they are unreasonable. *People v. Love*, 199 Ill. 2d 269, 275 (2002). Generally, reasonableness in the context of a fourth amendment search and seizure requires a warrant supported by probable cause. *Id.* However, in *Terry v. Ohio*, 392 U.S. 1 (1968), the United States Supreme Court provided an exception to the warrant and probable cause requirements. If a police officer "has 'knowledge of sufficient articulable facts at the time of the encounter to create a reasonable suspicion that the person in question has committed, or is about to commit, a crime' [citation], the officer may briefly stop and detain the person to make reasonable inquiries [citation]." *Love*, 199 Ill. 2d at 275 (quoting *People v. Smithers*, 83 Ill. 2d 430, 434 (1980)). Whether a *Terry* stop is supported by a reasonable suspicion depends on the facts known to the officer at the time of the stop, and such reasonable suspicion must be based on more than a mere hunch. *Ocampo*, 377 Ill. App. 3d at 161.

¶ 9        The defendant argues that the investigatory stop that resulted in the discovery of the cannabis was not supported by a reasonable articulable suspicion of criminal activity. The defendant notes that the officers did not describe the hand-to-hand exchange in any detail. The officers could not tell who handed the alleged object versus who received it and could not tell what was allegedly exchanged. The defendant argues, therefore, that the officers had no reason to believe that the defendant and the other individual were doing anything other than shaking hands. The defendant further notes that the officers did not describe the area as a high-crime area, were not on surveillance, and had no information that a drug transaction was expected to take place in that area. The defendant argues that this case is controlled by *Ocampo*.

¶ 10       In *Ocampo*, an officer testified that a person was in his car parked at a gas station and talking on his cell phone. *Id.* at 151. The defendant came from behind the gas station, walked

around the car, tapped on the trunk, and got in the front passenger seat. *Id.* at 152. The driver and the passenger exchanged a look and had a short conversation, and the defendant moved as if he were taking something out of his pocket. The officer could not hear the conversation or see the defendant's hands. *Id.* The officer did not testify that the gas station was a high-crime area or that the police had incriminating prior knowledge of the defendant or the driver. *Id.* at 161. This court found that the foregoing facts provided the officer with only a hunch of criminal activity. *Id.* at 162. We acknowledged that, although the defendant's movements were consistent with a drug transaction, they were also consistent with many innocent scenarios. *Id.* We further noted that the testimony did not indicate that the police had any reason, independent of the defendant's actions, to suspect criminal activity. Rather, the police observed the defendant "purely by coincidence, not as part of a stakeout of a known drug-trafficking area." *Id.*

¶ 11    The defendant argues that, like in *Ocampo*, (1) the officers did not see whether anything was actually exchanged, but saw actions that only led them to believe that an exchange occurred; (2) his actions were consistent with any number of innocent scenarios; and (3) the officers had no external information to justify the stop, other than the hand-to-hand exchange itself. Based on this court's holding in *Ocampo*, the defendant argues that the trial court erred in denying his motion to suppress.

¶ 12    The State argues that *Ocampo* is distinguishable because in that case the officers did not actually see anything being exchanged. Here, the State notes that the officers testified that they definitely saw something being exchanged, they just could not see what was exchanged. The State contends that the facts in this case are more similar to those in *Morales*, 221 Ill. App. 3d 13.

¶ 13    In *Morales*, an officer saw two men approach each other and exchange something, although the officer could not see what was exchanged. *Id.* at 15. The officer shined a spotlight on the two men. One walked into a nearby store and the other, the defendant, walked away holding his hands in a cupped fashion. *Id.* The officer again shined a spotlight on the defendant and pulled up next to him. *Id.* The officer exited the squad car and asked what had been exchanged. The defendant shrugged his shoulders. *Id.* The officer shined his flashlight at the defendant's hands and asked what was in his hands. The defendant showed him a butane lighter fluid box. *Id.* The officer testified that the exchange appeared to be a "drug-type transaction." *Id.* The reviewing court found the following facts sufficient to raise a reasonable suspicion of criminal activity: (1) the defendant was holding his hands in a cupped fashion close to his body; (2) the defendant appeared to exchange something with another person, which the officer characterized as a drug-type transaction; and (3) the defendant and the other man immediately separated when the officers arrived. *Id.* at 16.

¶ 14    The State argues that the following facts are consistent with those in *Morales*: (1) Officer Lafin testified that the exchange appeared consistent with a drug transaction; (2) the defendant and the individual in the Pontiac separated quickly after making the exchange; and (3) the defendant acted furtively when the squad car approached, *i.e.*, Officer Kucera had to yell at the defendant to stop.

¶ 15    The parties also discuss *In re F.R.*, 209 Ill. App. 3d 274 (1991). In *F.R.*, an officer

observed a driver pull up at a certain intersection and wave to the respondent, who was standing on the corner. *Id.* at 276. The respondent approached the car but immediately moved away from the car when he saw the officer and his partner. *Id.* The officer did not see the driver and the respondent exchange anything. *Id.* The officer testified that he had observed about 25 drug transactions at this particular intersection and had made around 12 arrests there in the last six months. *Id.* The drug transactions were conducted in the same manner–someone pulling up at the intersection and waving to someone on the corner, and that person approaching the car to carry out the drug transaction. *Id.* The reviewing court found that the officer had reasonable suspicion of criminal activity, based on the officer's experience of drug transactions occurring at that particular intersection in that particular manner. *Id.* at 280.

¶ 16 The defendant argues that *F.R.* is distinguishable because, in the present case, the officers did not testify that the defendant was in a high-crime area or that the defendant's actions resembled other drug transactions that occurred in that area. The State argues that *F.R.* supports a finding of reasonable suspicion in this case because what the officers observed followed a standard pattern for drug transactions, just as in *F.R.* The State further notes that the *F.R.* court found reasonable suspicion even though the officer in *F.R.* had not observed an actual exchange, and it contends that, since the officers in this case observed an exchange of something, there is a stronger basis for a finding of reasonable suspicion than in *F.R.*

¶ 17 We find that *Ocampo* is most persuasive. In the present case, as in *Ocampo*, the defendant's conduct was consistent with any number of innocent scenarios, the officers came upon the defendant purely by coincidence, and, other than the defendant's observed actions, the officers did not have any reason to suspect that criminal activity had taken place. Accordingly, the officers could not have had anything more than a hunch of criminal activity. *Ocampo*, 377 Ill. App. 3d at 161-62. The only distinguishing factor is that, in *Ocampo*, the officers did not actually see an exchange. Rather, they saw movements that only looked as if there was an exchange. The *Ocampo* court noted that this was a factor that distinguished the case from *Morales*. *Id.* at 163. However, the *Ocampo* court noted that this was not the critical distinction. Rather, the critical distinction was that the police in *Morales* observed much more suspicious activity. *Id.* at 164. Similarly, the fact that the officers in the present case actually saw an exchange is not a critical distinction from *Ocampo*. What is most critical are the similarities–the defendant was not in a known high-crime area, the officers came upon the defendant by coincidence, and the defendant's conduct was consistent with innocent activity.

¶ 18 *F.R.* is clearly distinguishable on the basis that the officers in that case testified that the observed actions occurred in a high-crime area, in a particular manner. In the present case, the officers did not testify that the transaction occurred in a high-crime area or that it occurred in a particular manner consistent with drug transactions specific to that area. See *id.* at 162-63 (distinguishing *F.R.* on these same bases).

¶ 19 *Morales* is also distinguishable from the present case in that there were no furtive movements here. In *Morales*, the defendant separated from the other person upon seeing the officers and walked away with his hands cupped. The State argues that here the defendant acted furtively, because "after [Officer Kucera] turned on the squad car's lights, the

defendant pulled in front of the squad car and kept driving. Officer Kucera had to yell at the defendant to stop." However, this argument misconstrues the evidence. Officer Lafin testified that, when the officers had pulled into the gas station and activated the emergency lights, the defendant had already backed out and begun to exit the lot. The squad car was perpendicular to the rear quarter panel of the Cadillac. Officer Kucera testified that the defendant had backed out, put the car in drive, and begun to pull forward when Officer Kucera activated the squad car's lights. He further testified that the defendant's car had already passed the front of the squad car and, therefore, Officer Kucera had to yell at the defendant to stop, which the defendant did. There is no indication from this testimony that the defendant saw the squad car and continued to drive, was attempting to evade the police, or otherwise acted in a furtive manner.

¶ 20    Accordingly, the investigatory stop of the defendant was illegal and the trial court should have granted the defendant's motion to suppress the evidence obtained as a result of that illegality, namely, the cannabis discovered in the defendant's front pocket. *People v. Kipfer*, 356 Ill. App. 3d 132, 143 (2005). Because the State would be unable to prove beyond a reasonable doubt that the defendant unlawfully possessed cannabis in the absence of that evidence, it is proper to reverse outright the defendant's conviction and sentence. See *id.*

¶ 21    For the foregoing reasons, the judgment of the circuit court of Du Page County is reversed.

¶ 22    Reversed.