THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
FRANK CAMPBELL, Defendant-Appellant.

Second District   No. 2—86—0414

Opinion filed October 5, 1987.

G. Joseph Weller and Steven E. Wiltgen, both of State Appellate Defender's Office, of Elgin, for appellant.

Paul A. Logli, State's Attorney, of Rockford (William L. Browers, of State's Attorneys Appellate Prosecutor's Office, of Elgin, and Robert J. Biderman and Peter C. Drummond, both of State's Attorneys Appellate Prosecutor's Office, of Springfield, of counsel), for the People.

JUSTICE DUNN delivered the opinion of the court:

Defendant, Frank Campbell, was convicted by a jury of burglary (Ill. Rev. Stat. 1985, ch. 38, par. 19—1) and was sentenced to a six-year term of imprisonment. Three issues are raised on appeal: (1) whether the investigative detention and pat-down search of defendant was illegal; (2) whether the State proved beyond a reasonable doubt that defendant possessed a felonious intent at the time of entry; and (3) whether the trial court erred in ruling that certain testimony sought to be introduced by the defendant was inadmissible hearsay. For the reasons set forth below, we reverse and remand.

Defendant was charged with burglarizing the private office of Luann Poole which was located on the third floor of the Rockford Trust office building (Trust building) in Rockford. Prior to trial, defendant filed a motion to suppress physical evidence seized from his person at the time of his arrest. At the suppression hearing, the following pertinent facts were revealed.

Officer Gary Reffett, a 16-year veteran of the Rockford police department, testified that on December 27, 1985, at 12:56 p.m., he was advised by the dispatcher to investigate a suspicious person report conveyed to police by David Mayfield, an attorney whose office was located on the fourth floor of the 12-story Trust building. Reffett had worked as a security guard at the Trust building on his off-hours during the previous six to eight months. Reffett was hired on account of numerous reports of property being stolen from the building. One month earlier, a purse had been reported stolen from a third floor office. Reffett arrived at the building within one minute of the dispatch and proceeded by elevator to the fourth floor. There he spoke with Mayfield, who advised Reffett that he had observed a "Negro" male in the hallway outside his office acting "suspiciously." Mayfield described the man as having a medium build, with a dark complexion and some facial hair. The man was wearing a brown cap with flaps, a brown suede jacket and Levi's. The man had walked past his office and proceeded down the hallway toward a storage area. Mayfield indicated he did not believe the man was one of the workers who periodi-

cally retrieved tools from the storage area. After talking to Mayfield, Reffett checked the storage area on the fourth floor and found nothing. Reffett then radioed the description provided by Mayfield to the dispatcher and advised that the suspect was no longer on the fourth floor.

Meanwhile, Officer Augustine Hernandez had arrived at the lobby of the building. Upon hearing that the suspect had left the fourth floor, Hernandez proceeded up the building's staircase. Between the third and fourth floors, Hernandez suddenly observed a man in front of him who fit the description provided by Mayfield which had previously been relayed by the dispatcher. The first thing defendant did was place his hands in the pockets of his jacket. Hernandez asked defendant for his name, but defendant did not answer. Hernandez then turned the defendant around and told him to put his hands up on the wall. When defendant failed to do so, Hernandez pulled defendant's hands out of his pockets and placed them on the wall. Hernandez again asked defendant for his name, but defendant did not respond. Hernandez then started patting down defendant for weapons. Defendant again tried to place his hands in his jacket pockets, and Hernandez again put defendant's hands on the wall. At this juncture, Reffett arrived on the scene. Hernandez continued patting down defendant and again attempted to ascertain defendant's identity. Defendant apparently provided the officers with two or three different identifications, none of which was correct. In defendant's lower jacket pockets, Hernandez observed a checkbook folder protruding from one pocket and a coin purse protruding from the other pocket. Hernandez removed the items from the pockets and gave them to Reffett. Hernandez then completed the pat-down search. No weapons were found. On cross-examination, Hernandez admitted the checkbook and coin purse did not look or feel like a gun or knife or any other kind of weapon.

Reffett testified substantially the same as Hernandez regarding the sequence of events surrounding the pat-down search. Reffett added that, when he received the checkbook and coin purse from Hernandez, he opened up the checkbook to see whose name was on the checks. Reffett discovered the name on the checks was Luann Poole. Reffett recognized the name as that of an office worker on the third floor who had filed a stolen purse report one month earlier. Poole had stated that her purse had been removed from a drawer of her desk located in her third-floor office. The intruder had been described as a black male. Reffett added that members of the public would not normally be near Poole's office area. After looking at the

checkbook, Reffett advised defendant he was under arrest.

The trial court denied defendant's motion to suppress.

At trial, David Mayfield testified that at approximately 12:50 p.m. on December 27, 1985, he observed defendant, whom he had not seen before, in the hallway outside his office coming from an area where there were no offices. Mayfield's office was located adjacent to the door leading to the stairway, and across the hall from three elevators. Luann Poole testified her office was on the third floor of the Trust building. Poole's office was located approximately four steps from the door leading to the stairway. The entryway to Poole's office consisted of two seven-foot high glass openings, one for the door and another for an adjoining window. Poole's desk was situated approximately seven steps from the office entrance. Poole worked as a loan processor for a bank and did not have any client contact at her office. She stated it was unusual for anyone other than her two co-workers to enter her office. On December 27 at about 12:50 p.m., Poole left her office to go to lunch. She left her purse containing her checkbook and wallet (her description of the item referred to by the officers as a coin purse) in one of the drawers of her desk. When Poole left her office for lunch, co-worker JoAnn Andrew remained. Fifteen minutes after she left for lunch, Poole identified as hers the checkbook and coin purse obtained from defendant. JoAnn Andrew testified she observed Poole leave the office. Andrew left approximately five minutes after Poole, leaving the door unlocked. Officers Reffett and Hernandez testified as they had at the motion to suppress.

Defendant called Tharveal Johnson for purposes of presenting testimony regarding a conversation Johnson and defendant had concerning employment at the Trust building on the day of the alleged burglary. The court refused to allow Johnson to testify regarding the conversation on grounds the testimony involved inadmissible hearsay. The defendant rested his case following the court's ruling precluding Johnson's testimony.

The jury found the defendant guilty of burglary.

On appeal, defendant first argues his detention by Hernandez was illegal because the articulable facts known by Hernandez prior to detaining him in the stairway failed to create a reasonable suspicion that defendant was involved in criminal activity. Defendant claims the information from the citizen's complaint did not bear a sufficient indicia of reliability, and defendant's hand movements were unremarkable. Defendant also argues factoring in Reffett's knowledge of prior burglaries in the building has no effect because the information was stale, and the description of the perpetrator was limited to "black

152

male."

■■ ■ For a police officer to lawfully stop a citizen in a public place, there must be specific and articulable facts which taken together with the rational inferences therefrom create a reasonable suspicion that the person in question has committed or is about to commit a crime. (*Terry v. Ohio* (1968), 392 U.S. 1, 21, 20 L. Ed. 2d 889, 906, 88 S. Ct. 1868, 1879; Ill. Rev. Stat. 1985, ch. 38, par. 107−14.) Although a mere suspicion or inarticulable hunch is insufficient to justify a warrantless stop (*People v. Fox* (1981), 97 Ill. App. 3d 58, 62, 421 N.E.2d 1082), probable cause need not be present. (*People v. Zielinski* (1980), 91 Ill. App. 3d 519, 521, 414 N.E.2d 1113.) Where police officers are working together, the knowledge of each is the knowledge of all. (*People v. Waln* (1983), 120 Ill. App. 3d 73, 77, 457 N.E.2d 979.) Consequently, the reasonable suspicion necessary to stop a defendant may be established on the basis of the aggregated and cumulative information known to the police officers working in concert. (*People v. Hobson* (1983), 117 Ill. App. 3d 191, 202, 452 N.E.2d 771.) Therefore, whether the stop of defendant by Hernandez was justified does not depend solely on the facts known to Hernandez at the time of the stop; rather, the facts known to both Hernandez and Reffett must be considered. Finally, the absence of any conclusive rules for determining whether an investigatory stop is justified requires that each case be adjudicated on its particular facts. *People v. Moffitt* (1985), 138 Ill. App. 3d 106, 112, 485 N.E.2d 513.

In the present case, two police officers responded to a suspicious person complaint. The first officer to arrive, Reffett, interviewed the complainant, who gave a general description of an unfamiliar person walking towards a storage area on the fourth floor of an office building. During the previous year items had been stolen from the building on several occasions, the last reported incident occurring one month earlier. Reffett was aware of these prior incidents on account of his position as a security guard at the building. After interviewing complainant, Reffett transmitted the description provided to the dispatcher, who in turn notified Hernandez. After hearing the description, Hernandez proceeded up the stairway. Between the third and fourth floors, he was suddenly face to face with an individual fitting the description who immediately placed his hands in his pockets. Hernandez then requested identification, which was refused, placed defendant's hands on the wall and frisked him for weapons.

■ In our opinion, the pertinent articulable facts known to the police at the time of the stop (*i.e.*, Mayfield's report of a suspicious individual walking down the hallway outside his office towards an un-

occupied storage area; Officer Reffett's knowledge of recent criminal activity involving stolen property in the building; and defendant's furtive hand gestures upon seeing Officer Hernandez in the stairway) and the reasonable inferences therefrom provided reasonable cause to detain the defendant.

■■ Defendant next contends the scope of the police officers' patdown search was unlawful. The "frisk" of the person detained must be "confined in scope to an intrusion reasonably designed to discover objects capable of use as weapons." (*People v. Felton* (1974), 20 Ill. App. 3d 103, 106, 313 N.E.2d 642; Ill. Rev. Stat. 1985, ch. 38, par. 108—1.01.) The sole justification for this type of search is protection of the police officer and others nearby. (*Terry v. Ohio* (1968), 392 U.S. 1, 26, 20 L. Ed. 2d 889, 908, 88 S. Ct. 1868, 1882.) Therefore, objects that feel similar to a gun or other weapon may be removed for further investigation. (*People v. Gunsaullus* (1979), 72 Ill. App. 3d 440, 444-45, 391 N.E.2d 142.) Conversely, items that do not feel like weapons or do not feel like they contain weapons may not be removed. (*People v. Pritchett* (1979), 75 Ill. App. 3d 127, 130, 393 N.E.2d 1157 (envelope protruding two or three inches above pocket that did not feel like it contained a metal object or weapon improperly removed from pocket and opened); *People v. McCarty* (1973), 11 Ill. App. 3d 421, 422, 296 N.E.2d 862 (soft plastic bag improperly removed from pocket and opened).

■■ In the present case, while Officer Hernandez "frisked" defendant, he observed a checkbook and a coin purse (described by Poole as a wallet) protruding from defendant's jacket pockets. Reffett also observed the items. During the pat-down search, Hernandez removed the items and gave them to Reffett, who proceeded to open the checkbook and read the name on the printed checks. The record does not indicate the officers suspected the checkbook or the coin purse contained a weapon. Both the checkbook and the coin purse and its contents were introduced into evidence at trial. Because the checkbook and coin purse were obviously not weapons and there is no indication the officers believed these items contained weapons, the removal of the checkbook and the coin purse was improper. (*People v. Pritchett* (1979), 75 Ill. App. 3d 127, 393 N.E.2d 1157; *People v. McCarty* (1973), 11 Ill. App. 3d 421, 296 N.E.2d 862.) Therefore, the checkbook and coin purse should have been suppressed.

The defendant's failure to properly identify himself during the detention does not provide a basis in the present case for the removal and opening of the checkbook as contended by the State. There is no indication in the record the police officers were attempting to ascer-

tain the defendant's identity when they removed and opened the checkbook during the pat-down search. Absent such indication, no grounds exist for finding the seizure and search of the checkbook lawful as an identification search incident to a "stop and frisk." We express no opinion on the validity of such searches in situations where the police are attempting to ascertain a detainee's identity. A discussion of this issue is found in 3 W. LaFave, Search and Seizure sec. 9.4(g) (2d ed. 1987).

■ We also do not agree with the State's assertion that the "inevitable discovery" exception to the exclusionary rule is applicable here. (*Nix v. Williams* (1984), 467 U.S. 431, 81 L. Ed. 2d 377, 104 S. Ct. 2501.) The case relied on by the State, *People v. Faysom* (1985), 131 Ill. App. 3d 517, 475 N.E.2d 945, actually indicates why the "inevitable discovery" exception has no application. In *Faysom*, the court concluded that the weapon, which defendant sought to suppress on grounds it was the fruit of a fifth amendment violation, "would" have ultimately or inevitably been discovered based on information previously obtained from a separate source. (131 Ill. App. 3d 517, 526-27, 475 N.E.2d 945.) In the present case, at the time of the stop, there was no previously ongoing police investigation or information known to the police that could have provided a basis for the inevitable discovery of the items seized. Moreover, while the police *might* have discovered the items during the succeeding course of their investigation of defendant, we are unpersuaded on the record before us that the police officers *would* have inevitably discovered the items had no misconduct taken place. In short, we believe it is entirely too speculative to conclude the checkbook and coin purse would have inevitably been discovered.

■ Although the cause must be remanded for further proceedings, we must address defendant's reasonable doubt argument in order to remove the risk of subjecting the defendant to double jeopardy. (*People v. Brooks* (1987), 115 Ill. 2d 510, 522, 505 N.E.2d 336; *People v. Taylor* (1979), 76 Ill. 2d 289, 309, 391 N.E.2d 366.) Our holding that defendant was proved guilty beyond a reasonable doubt on the record before us is of course in no way binding on retrial. *People v. Taylor* (1979), 76 Ill. 2d 289, 310, 391 N.E.2d 366; *People v. Nolan* (1987), 152 Ill. App. 3d 260, 268, 504 N.E.2d 205.

Defendant argues the State failed to prove him guilty of burglary beyond a reasonable doubt because there was insufficient proof he intended to commit a theft at the time he entered Poole's office. Defendant asserts his entry into a public office during regular business hours without evidence he possessed burglary tools or knew the

location of the purse inside Poole's office precludes a finding that defendant entered the office with the intent to commit a theft. As support for his argument, defendant relies exclusively on *People v. Boose* (1985), 139 Ill. App. 3d 471, 487 N.E.2d 1088, and *People v. Vallero* (1978), 61 Ill. App. 3d 413, 378 N.E.2d 549.

In *Boose* and *Vallero*, the defendants' burglary convictions were reversed after the courts found that criminal intent was not formulated until after a lawful entry had been made and, therefore, an essential element of burglary was not proved. In *Boose*, the evidence indicated that defendant entered a department store during regular business hours in a highly intoxicated state and somehow remained in the store after closing time. Defendant fell asleep in a storeroom and was awakened the next morning by a security guard. Defendant was wearing several items of clothing bearing tags from the department store. No sales receipts were in defendant's possession. The court concluded this evidence failed to establish beyond a reasonable doubt that defendant entered the department store with an intent to commit theft. *People v. Boose* (1985), 139 Ill. App. 3d 471, 474, 487 N.E.2d 1088.

In *Vallero*, defendant entered the office area of a dairy and requested a job application. He was seated at a desk where payroll checks were being processed. Defendant returned the job application, which was blank, and left the building. A dairy employee later determined that some payroll checks were missing. Defendant was later involved in forging and cashing a number of the payroll checks. As in *Boose*, the court determined there was insufficient proof defendant had the intent to commit a theft at the time of entry. *People v. Vallero* (1978), 61 Ill. App. 3d 413, 415, 378 N.E.2d 549.

Defendant contends the present case is controlled by the reasoning relied on in *Boose* and *Vallero*. We do not agree. In each of those cases the evidence supported an inference that the defendants did not formulate the intent to commit a theft until after entry into the public place. Here, on the contrary, the record lacks any factual basis for inferring that defendant's intent to commit a theft arose after he entered Poole's office. Therefore, the authority relied on by defendant fails to support his argument.

■■ ■ However, whether there was sufficient proof that defendant intended to commit a theft at the time he entered Poole's office must still be determined. There was no direct evidence presented relative to defendant's intent at the time of entry, which is not uncommon in a burglary prosecution. The crime of burglary often requires that its elements be proved by circumstantial evidence, especially the in-

tent to commit a felony or theft element. (*People v. Richardson* (1984), 104 Ill. 2d 8, 13, 470 N.E.2d 1024; *People v. Obrochta* (1986), 149 Ill. App. 3d 944, 949, 500 N.E.2d 1059.) Although the exclusive and unexplained possession of recently stolen property, standing alone, fails to establish the intent to commit a theft element, an inference of criminal intent in such circumstances is proper where: "(1) there is a rational connection between the possession and the participation in the burglary; (2) the guilt of burglary more likely than not flows from the possession of the burglary proceeds; and (3) there is corroborating evidence of guilt." (*People v. Mallette* (1985), 131 Ill. App. 3d 67, 70, 475 N.E.2d 237; see *People v. Housby* (1981), 84 Ill. 2d 415, 424, 420 N.E.2d 151.) In *Mallette*, the court pointed out that " '[t]he same evidence will apparently satisfy all three prongs of the *Housby* test.' " (*People v. Mallette* (1985), 131 Ill. App. 67, 71, 475 N.E.2d 237, quoting *People v. Klein* (1983), 115 Ill. App. 3d 582, 585, 450 N.E.2d 1268.) In our opinion, there was sufficient circumstantial evidence in the present case permitting an inference that defendant had the intent to commit a theft when he entered Luann Poole's office.

██ The incriminating factors presented at trial, aside from defendant's recent and unexplained possession of Poole's checkbook and coin purse, are as follows. An attorney working in his fourth-floor office observed an individual he had not seen before coming from an unoccupied area of the building. The door leading into Luann Poole's third-floor office was made of glass and there was a glass window adjacent to the door. No one was in the office when defendant entered, and defendant did not have permission to enter. Poole and her coworkers did not see clients in their office and rarely had visitors. Defendant was apprehended within minutes of the theft. When first observed, defendant repeatedly attempted to place his hands in the jacket pockets from where the checkbook and coin purse were retrieved. Defendant initially refused to identify himself and later provided two or three different names, none of which were correct. We believe these circumstances, when viewed in the context of defendant's recent and unexplained possession of stolen property, were sufficient to provide a basis for the jury to permissively infer that defendant had the intent to commit a theft at the time he entered Poole's office.

Finally, we address defendant's last contention because it could recur on retrial. Defendant argues the trial court erred in precluding the admission of certain defense testimony. At trial, the defense theory was that defendant did not have the intent to commit a theft

when he entered Luann Poole's office. In an attempt to provide a factual basis for this theory, defendant called Tharveal Johnson to testify regarding a conversation they had concerning employment prospects for defendant at the Trust building. The offer of proof provided in pertinent part:

"[On] December 27, 1985, *** Johnson and the Defendant were discussing jobs and where the Defendant could go to look for a job, that he was looking for a job doing construction or maintenance work, that Mr. Johnson told him to go downtown and specifically told him there might be jobs available at the Rockford Trust building because remodeling was going on there."

At trial, the court initially ruled the testimony was admissible but later ruled the testimony inadmissible because it was remote and fundamentally hearsay.

■■ It is axiomatic that out-of-court statements offered for purposes other than establishing the truth of the matter asserted are not hearsay and may be admitted into evidence provided the other requirements of admissibility are met. (E. Cleary & M. Graham, Handbook of Illinois Evidence sec. 801.1 (4th ed. 1984).) This rule encompasses out-of-court statements offered to prove the resultant effect on the listener's state of mind. (*People v. Davis* (1984), 130 Ill. App. 3d 41, 53, 473 N.E.2d 387; *People v. Kline* (1980), 90 Ill. App. 3d 1008, 1012, 414 N.E.2d 141.) As stated in Cleary & Graham:

"In another group falling outside the category of hearsay, a statement made by one person that becomes known to another is offered for the purpose of showing the latter's state of mind as a circumstance under which the latter acted and as bearing upon his conduct." (E. Cleary & M. Graham, Handbook of Illinois Evidence sec. 801.5, at 516 (4th ed. 1984).)

We believe the statements sought to be introduced through defense witness Johnson were not hearsay statements and were not otherwise inadmissible.

■■ Johnson's testimony regarding his conversation with defendant about job prospects was not offered to prove there were jobs available at the Trust building; rather, it was offered for purposes of establishing defendant's state of mind at the time he entered Poole's office in the Trust building. Therefore, the proposed evidence was not hearsay and was erroneously excluded on that basis. Furthermore, admissibility should not have been precluded on remoteness grounds. A sufficient nexus existed to permit the jury to consider the proposed statements in view of the fact the crime took place at approximately

one o'clock in the afternoon, and the conversation between Johnson and defendant apparently occurred earlier that day. While we acknowledge the defendant's state of mind at the time he entered Poole's office may not have been influenced by his conversation with Johnson, this factor affects the weight and not the admissibility of the evidence and could have been fully addressed by the State on cross-examination of Johnson and in closing argument. In sum, because the defendant's state of mind was the critical question to be resolved and Johnson's testimony was relevant to that question, we believe the evidence sought to be introduced by the defendant should have been presented to the jury for consideration.

For the foregoing reasons, the judgment of the circuit court of Winnebago County is reversed, and the cause is remanded for further proceedings consistent with this opinion.

Reversed and remanded.

REINHARD and WOODWARD JJ., concur.