THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v.
RODNEY CONARD, Defendant-Appellee.

Third District    No. 3—90—0514

Opinion filed May 21, 1991.

William Poncin, State's Attorney, of Macomb (Terry A. Mertel, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

Joseph N. Ehmann, of State Appellate Defender's Office, of Ottawa, for appellee.

PRESIDING JUSTICE STOUDER delivered the opinion of the court:

The State appeals the granting of a suppression motion in favor of the defendant, Rodney Conard. The sole question on appeal is whether the trial court properly suppressed the evidence. We affirm.

The record shows that the State charged the defendant with residential burglary (Ill. Rev. Stat. 1989, ch. 38, par. 19—3). The defendant subsequently filed a motion to suppress, alleging that the police had improperly seized a coin purse from his person.

At a hearing on the motion, Officer Robert Fitzgerald testified that he was patrolling Macomb on the afternoon of November 28, 1989. Around 4:47 p.m., he heard a dispatch that a suspicious person had left a residence at 918 West Jefferson Street. The person was described as a 5-foot 10-inch white male, weighing about 170 pounds and wearing faded blue jeans, a tan vest, sunglasses, and a black stocking cap.

The officer proceeded to the neighborhood of the home in question. When he was about two blocks from the home, he saw the defendant walking along the side of the street. The officer described him as being about 5 feet 10 inches weighing 170 to 180 pounds, and wearing faded blue jeans, a dark blue, hooded sweat shirt, a brown jacket, a green baseball cap, and sunglasses. The defendant was walking toward 918 West Jefferson Street.

Fitzgerald testified that he pulled into a driveway about a half block in front of the defendant and waited for him to approach. He then stepped out of his car and began questioning him. The defendant said that he had been in a bar since he left work and was on his way to get something to eat. When the officer said that a person matching his description had been seen leaving a house on West Jefferson Street, the defendant said that he had been looking for a friend at some houses on Jefferson Street. He gave the name of his friend, but the officer could not recall it.

Fitzgerald stated that the defendant complained that he was being harassed. Officer Leo Icenogle then arrived on the scene and joined the discussion. When Fitzgerald asked the defendant his name, the defendant gave his correct name and birth date, but he could not produce any identification.

Fitzgerald believed that the defendant was acting in a slightly hostile manner, so he frisked him for weapons. He found a pocket-knife in his pants pocket and felt two long thin objects and a harder, bulky object in his coat. Fitzgerald was unable to remove them because they had fallen through a hole in a pocket and were stuck in the jacket lining. On Fitzgerald's instructions, the defendant took them out, revealing them to be two marking pencils and a leather coin purse.

The defendant said that his father had given him the coin purse that morning and that it contained change. Although Fitzgerald did not ask him to, the defendant opened it and showed him its contents. Fitzgerald verified that it contained change and a Red Cross pin.

Fitzgerald further testified that Officer Earl Hedeen arrived on the scene with Don Smith, the person who had phoned in the report. Hedeen told Fitzgerald that Smith thought the defendant was the man who had been in the home, but he was not certain.

Hedeen took Smith home and returned with Bud Haney, the owner of the home at 918 West Jefferson. Haney said that the coin purse resembled one that was missing from his home and correctly described its contents. At that point, the officers told the defendant he was under arrest.

Officer Icenogle then testified. His testimony was in general agreement with that of Officer Fitzgerald.

Officer Hedeen testified that after hearing the report of the possible break-in, he proceeded to 918 West Jefferson. He walked in through the open back door and made a quick search of the premises. No one appeared to be home. He then went outside and spoke with Don Smith. Smith told him he had seen someone whom he did not

recognize enter the home. Since Smith thought it could be a relative, he called the home, but there was no answer. Smith then saw the man leave. Smith called out to him, but the man put his head down and quickly walked away.

Smith agreed to accompany Hedeen to view the defendant. When they arrived at the scene of the questioning, Smith said that the defendant looked like the man he had seen, but he was not certain. Hedeen then returned Smith to his home.

The defendant testified that he was wearing white gloves when Fitzgerald approached him. He cooperated with the officers, although he believed they were harassing him. He also said that after he produced the purse, Fitzgerald opened it.

The trial court found that Fitzgerald had sufficient grounds to stop the defendant. The court further found, however, that Fitzgerald did not have grounds to fear for his safety and therefore should not have frisked the defendant. The court also found that even if a search for weapons were justified, the officer exceeded the scope of the search by asking the defendant to produce the coin purse.

Lastly, the court found that the evidence was not admissible under the inevitable discovery doctrine. The court stated that in order for the doctrine to apply, the evidence had to show that the officers could have lawfully arrested the defendant based solely on Smith's identification. The court found that the identification did not provide sufficient grounds for a lawful arrest. Accordingly, it granted the motion to suppress.

On appeal, the State argues that the trial court erred. It first contends that under *Terry v. Ohio* (1968), 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868, and its progeny, Fitzgerald made a valid search of the defendant. The defendant replies that Fitzgerald lacked sufficient grounds to perform a *Terry* stop. He further argues that even if Fitzgerald had sufficient grounds, he did not perform a valid search.

■ Initially, we note that the trial court's decision should only be reversed if it was against the manifest weight of the evidence. *People v. Hunt* (1989), 188 Ill. App. 3d 359, 544 N.E.2d 118.

■ Turning to the first question of whether Fitzgerald performed a valid *Terry* stop, we agree with the trial court's finding that he did. In order to detain the defendant, Fitzgerald must have had a reasonable suspicion, based on objective facts, that the defendant was involved in criminal activity. (*Brown v. Texas* (1979), 443 U.S. 47, 61 L. Ed. 2d 357, 99 S. Ct. 2637.) Based on the information given in the dispatch and the defendant's appearance, we find that Fitzgerald was justified in stopping the defendant for further investigation.

■ As for whether Fitzgerald made a valid search, we note that since he performed a *Terry* stop, he could only make a pat-down search if he had a reasonable belief, based on articulable facts, that his safety was in danger. (*People v. Brown* (1989), 190 Ill. App. 3d 511, 546 N.E.2d 95.) The mere fact that the defendant was a burglary suspect did not give Fitzgerald the automatic right to frisk him. *People v. Galvin* (1989), 127 Ill. 2d 153, 535 N.E.2d 837.

■ In the instant case, there was little evidence that Fitzgerald was in danger. He and Icenogle outnumbered the defendant, and the defendant offered little resistance. Moreover, at the time of the search there was a substantial question as to whether the defendant had committed a crime. There were some discrepancies between the suspect's description and the defendant's appearance, and there was no specific evidence that anyone had removed property from the home. Based on the foregoing, we find that the court's conclusion that Fitzgerald should not have searched the defendant was not against the manifest weight of the evidence.

■ We also find that even if the officer had a right to search, the search went beyond its proper scope. In a *Terry* stop, an officer may only make a search reasonably designed to discover objects capable of being used as weapons. (*People v. Campbell* (1987), 161 Ill. App. 3d 147, 514 N.E.2d 241.) He may therefore only remove an object concealed in clothing if he reasonably believes it to be a weapon. See *People v. Gunsaullus* (1979), 72 Ill. App. 3d 440, 391 N.E.2d 142.

This case is similar to *People v. McCarty* (1973), 11 Ill. App. 3d 421, 296 N.E.2d 862, where the court held that a plastic bag filled with cannabis could not reasonably be suspected of being a weapon. As in *McCarty*, we find it difficult to understand how Fitzgerald could reasonably believe that the coin purse was a weapon, given its position and shape. Significantly, instead of making further efforts to remove the coin purse or asking the defendant to take off his jacket, he allowed the defendant to produce the object. We therefore hold that the trial court's finding that the search exceeded its permissible scope was not against the manifest weight of the evidence.

■ Lastly, the State argues that the purse would have been discovered under the inevitable discovery doctrine. It notes that under this doctrine, illegally seized evidence may be admitted if it can be shown that the evidence would have ultimately been discovered by lawful means. (*Nix v. Williams* (1984), 467 U.S. 431, 81 L. Ed. 2d 377, 104 S. Ct. 2501.) The State argues that even if the coin purse had not been discovered, the police would have arrested the defend-

ant. Consequently, the coin purse would have been found in a search incident to arrest or in an inventory search.

We disagree. Absent the coin purse, the police had little evidence that the defendant had committed a crime. Smith's identification was uncertain, and there was little other evidence that the defendant had removed property from the home. Accordingly, we hold that the trial court could properly conclude that the evidence would not have been inevitably discovered by lawful means.

The judgment of the circuit court of McDonough County is affirmed.

Affirmed.

BARRY and McCUSKEY, JJ., concur.