THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
MARIANO MORALES, Defendant-Appellant.
Second District    No. 2—89—0974

Opinion filed October 23, 1991.

14

G. Joseph Weller and Manuel S. Serritos, both of State Appellate Defender's Office, of Elgin, for appellant.

Gary V. Johnson, State's Attorney, of Geneva (William L. Browers, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

PRESIDING JUSTICE REINHARD delivered the opinion of the court:

Defendant, Mariano Morales, was found guilty by a jury in the circuit court of Kane County of the offenses of possession with intent to deliver a substance containing cocaine (Ill. Rev. Stat. 1987, ch. 56½, par. 1401(b)(2)), possession of a substance containing cocaine (Ill. Rev. Stat. 1987, ch. 56½, par. 1402(b)), possession of a substance containing cannabis (Ill. Rev. Stat. 1987, ch. 56½, par. 704(d)), and possession with intent to deliver a substance containing cannabis (Ill. Rev. Stat. 1987, ch. 56½, par. 705(d)). Judgment was subsequently entered by the trial judge on both counts charging intent to deliver, and the verdicts on the possession counts were vacated. Defendant was sentenced to concurrent five-year terms of imprisonment to be served consecutively to a sentence in an unrelated case (No. 88—CF—991) and fined $800.

On appeal, defendant raises two issues: (1) whether the stop and frisk pursuant to *Terry v. Ohio* (1968), 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868, was proper; and (2) whether the simultaneous possession with intent to deliver the controlled substance and cannabis requires the vacation of the lesser offense.

The facts in this case are generally not in dispute. At a hearing on defendant's motion to suppress evidence, Officer Nick Coronado, a four-year officer of the Aurora police department, testified that on the evening of December 4, 1988, he was in uniform on patrol in a marked squad car. From a distance of about 20 feet, he saw defendant and another man approach each other and appear to exchange something. Although he characterized the men's behavior as a "drug-type action," Officer Coronado saw no drugs or money exchanged between the two men. After Officer Coronado shined a spotlight on the two men, defendant walked away toward the corner of Claim and Union Streets in Aurora, and the other man entered a nearby store. Defendant was walking with his hands in a cupped fashion. Defendant turned south on Union and walked about half a block. Coronado and his partner, Officer Greg Thomas, followed in the squad car. Officer Coronado decided to stop defendant because he thought defendant either made a drug purchase or sale. The officers again shined the squad car spotlight on defendant and pulled up next to him. Officer Coronado exited the car and asked defendant what had been exchanged. Defendant said nothing and shrugged his shoulders. Officer Coronado shined his flashlight towards defendant's hands. Officer Coronado then asked defendant what was in his hands, and defendant showed him a cardboard box which looked like a butane lighter fluid box. Coronado did not examine the box at that time but later, after defendant was arrested, determined it to contain a tube of butane lighter fluid.

Officer Coronado testified that he "noticed [defendant] had a bulge in his pocket." The bulge was eight inches long and protruded an inch to an inch and a half from the upper right side of defendant's jeans' jacket pocket. Officer Coronado initially thought that the bulge was a firearm. He told defendant to put his hands on the squad car, but defendant took a step backward. Officer Coronado again told defendant to put his hands on the squad car, and again defendant took a step back. Defendant appeared to be very nervous. Officer Coronado then placed a hand on defendant and guided him to the squad car.

When Officer Coronado frisked defendant and squeezed the bulge, it compressed. According to Coronado, "I squeezed the bulge and it

made like a crackling sound, and it felt like it was a baggie or some type of plastic bag." He testified that he had felt cannabis in a plastic bag through clothing like defendant's 12 to 18 times previously. Based on his experience, Coronado immediately thought that it was a bag of cannabis.

After asking defendant what was in his pocket and receiving no response, Coronado reached in and pulled the bag out about three inches. He saw that it contained a green plant material which he believed was cannabis and arrested defendant. Incident to the arrest, Coronado searched defendant and found another plastic bag which contained a white powdery substance and two marijuana cigarettes.

The trial court denied defendant's motion to suppress. In denying the motion, the trial judge stated the following:

> "The part that bothered me was once they patted him down, that they felt something that they knew was not a weapon, did they have a right to go into the inside of his pocket and pull it out.

> One of the cases [the prosecutor] gave me is a California case, and there is another one from Illinois, basically stated based on experience, et cetera, that they can do it, which somewhat surprised me. But that's my justification for it. Motion denied."

At trial, Officer Coronado's testimony was generally the same. Testimony also established that there were 11 packets of cocaine in the plastic bag which contained a total of 5.3 grams of cocaine and that the cannabis weighed 35 grams.

As to the first issue of whether the stop and frisk was proper, defendant initially contends that Officer Coronado's actions in initially stopping him were based on a hunch and not a substantial possibility of criminal conduct. The State asserts that the stop was proper based on certain observations of Coronado: specifically that there appeared to be an exchange, that defendant's hands were cupped together as if holding something, that defendant did not respond verbally to questioning and that defendant and the other man immediately separated when they saw the police. We note that, in reviewing a ruling on a motion to quash arrest and suppress evidence, a reviewing court will not reverse the trial court's denial of the motion unless it was clearly erroneous. *People v. Henderson* (1990), 142 Ill. 2d 258, 293, 568 N.E.2d 1234.

Initially, we note that the trial judge sustained defendant's objections when the State sought to elicit testimony concerning past criminal activity in the area of Claim and Union Streets. This appears to

contradict case law which has considered the criminal activity in an area as a factor in determining whether an investigatory stop was proper. See, *e.g., People v. McGowan* (1977), 69 Ill. 2d 73, 78-79, 370 N.E.2d 537; *In re F.R.* (1991), 209 Ill. App. 3d 274, 280, 568 N.E.2d 133; *People v. Campbell* (1987), 161 Ill. App. 3d 147, 152-53, 514 N.E.2d 241.

■ Neither defendant nor the State disputes at what point the seizure of defendant occurred. Both the State and defendant seem to assume the seizure occurred when Coronado exited the squad car and approached defendant. Accordingly, we will address the propriety of the *Terry* stop at that point in time.

A police officer may make a valid investigatory stop absent probable cause for an arrest, provided that the officer's decision is based on specific, articulable facts which warrant the investigative stop intrusion. (*Terry v. Ohio* (1968), 392 U.S. 1, 21, 20 L. Ed. 2d 889, 906, 88 S. Ct. 1868, 1879-80.) An officer may properly stop a person if the officer possesses knowledge of sufficient articulable facts to create a reasonable suspicion that the person has committed, or is about to commit, a crime. *People v. Smithers* (1980), 83 Ill. 2d 430, 434, 415 N.E.2d 327; Ill. Rev. Stat. 1989, ch. 38, par. 107—14.

At the time of the seizure, Officer Coronado possessed knowledge of the following facts: defendant was holding his hands in a cupped manner, close to his body; defendant had appeared to exchange something with another man which Coronado characterized as a "drug-type action"; and defendant and the other man immediately separated when the officers arrived. We believe that these facts are sufficient to create a reasonable suspicion to justify the investigative stop.

Defendant next contends that, even if Officer Coronado properly stopped him, the frisk was improper because Coronado had no legitimate reason to fear for his or his partner's safety. Defendant contends that, because there was no testimony that defendant reached for the bulge, Coronado had no legitimate reason to believe defendant was armed. This contention is without merit.

■ The right to frisk does not automatically follow the right to stop. (*People v. Galvin* (1989), 127 Ill. 2d 153, 165, 535 N.E.2d 837.) In determining whether a frisk is proper, each case must stand or fall on its own facts. (*Galvin,* 127 Ill. 2d at 174, 535 N.E.2d at 846.) An officer may conduct a frisk only if he has reason to believe that he is dealing with an armed and dangerous individual and that either his safety, or the safety of others, is in danger. (*Smithers,* 83 Ill. 2d at 434-35, 415 N.E.2d at 330; see Ill. Rev. Stat. 1989, ch. 38, par. 108—1.01.) The sole justification of a frisk is the protection of the officer

and others nearby; it is not to gather evidence. (*Galvin*, 127 Ill. 2d at 170, 535 N.E.2d at 845.) A characteristic bulge in a validly stopped suspect's clothing is a circumstance which is generally sufficient to warrant a frisk. *People v. Pittman* (1984), 126 Ill. App. 3d 586, 592, 467 N.E.2d 918; *People v. Blakes* (1977), 55 Ill. App. 3d 654, 658, 370 N.E.2d 869; see 3 W. LaFave, Search & Seizure §9.4(a), at 507 (2d ed. 1987).

In this case, Officer Coronado testified that he thought the large bulge in defendant's jacket was a weapon. The bulge combined with the other circumstances attendant to the reasons for the stop was sufficient to give Coronado reason to believe defendant was armed.

Defendant finally contends that, even if Officer Coronado properly stopped and frisked him, the scope of the search was improper because after squeezing the bulge, Coronado should have known that it was not a weapon and searched no further.

■ For an officer lawfully to remove from a person's clothing an object the officer feels during a pat-down search, that officer must believe the object might be a weapon and articulate a basis for that belief. (*People v. Ricksy* (1990), 206 Ill. App. 3d 302, 309, 564 N.E.2d 256; *People v. Conard* (1991), 213 Ill. App. 3d 1068, 1072, 572 N.E.2d 1203.) Items that do not feel like weapons or do not feel like they contain weapons may not be removed. (*People v. Campbell*, 161 Ill. App. 3d at 153, 514 N.E.2d at 245.) Generally, absent other circumstances, once an officer determines that a bulge is soft, the search may not proceed further under the limited scope authorized by *Terry. People v. Creagh* (1991), 214 Ill. App. 3d 744, 748, 574 N.E.2d 96; *In re F.R.*, 209 Ill. App. 3d at 282, 568 N.E.2d at 138.

Here, the removal of the bag from defendant's person once Officer Coronado had felt the bulge and had no reason to suspect it was a weapon cannot be justified under the limited scope of a *Terry* pat down and seizure of a weapon so discovered.

However, this holding does not end our analysis. "Assuming the object discovered in the pat-down does not feel like a weapon, this only means that a further search may not be justified under a *Terry* analysis. There remains the possibility that the feel of the object, together with other suspicious circumstances, will amount to probable cause that the object is contraband or some other item subject to seizure, in which case there may be a further search based upon that probable cause." 3 W. LaFave, Search & Seizure §9.4(c), at 524 (2d ed. 1987); *cf. People v. Bujdud* (1988), 177 Ill. App. 3d 396, 403, 532 N.E.2d 370 (investigatory stop "matured to probable cause"); *People v. Valdez* (1987), 196 Cal. App. 3d 799, 806, 242 Cal. Rptr. 142, 146

("officer's entry into the individual's pocket can only be justified if the officer's sensorial perception, coupled with the other circumstances, were sufficient to establish probable cause to arrest the defendant for possession of narcotics *before the entry into the pocket*") (emphasis in original).

Probable cause exists when the totality of the facts and circumstances known to the officer is such that a reasonably prudent person would believe that the suspect is committing or has committed a crime. (*People v. Montgomery* (1986), 112 Ill. 2d 517, 525, 494 N.E.2d 475.) Whether probable cause is present is governed by commonsense considerations, and the calculation concerns the probability of criminal activity, rather than proof beyond a reasonable doubt. *Montgomery*, 112 Ill. 2d at 525, 494 N.E.2d at 477-78.

In the instant case, Officer Coronado's uncontradicted testimony was that when he squeezed the bulge in defendant's pocket, he immediately believed, based upon his prior experience in about 12 to 18 cases in feeling cannabis in a plastic bag through clothing similar to defendant's, that the bulge was a bag containing cannabis. As possession of cannabis is a violation of the Cannabis Control Act (Act) (Ill. Rev. Stat. 1989, ch. 56½, par. 704), under the circumstances, there was probable cause to reach inside defendant's jacket and seize what the officer believed was contraband prohibited under the Act. (See *Texas v. Brown* (1983), 460 U.S. 730, 742-43, 75 L. Ed. 2d 502, 514, 103 S. Ct. 1535, 1543-44.) Accordingly, based on the uncontradicted testimony presented here, the ruling of the trial court denying defendant's motion to quash arrest and suppress evidence was not clearly erroneous both as to the cannabis seized and the cocaine discovered following a search of defendant incident to his lawful arrest for the cannabis violation.

The second issue defendant raises is that *People v. Manning* (1978), 71 Ill. 2d 132, 374 N.E.2d 200, requires us to vacate his conviction of possession of cannabis with intent to deliver.

In *People v. Manning* (1978), 71 Ill. 2d 132, 374 N.E.2d 200, our supreme court held that in the absence of a statutory provision to the contrary, the simultaneous possession of more than one type of controlled substance constituted a single offense, and, thus, only one sentence should be imposed. (71 Ill. 2d at 137, 374 N.E.2d at 202.) However, *Manning* appears to be based on a statutory analysis rather than a single-act analysis (*People v. Green* (1990), 199 Ill. App. 3d 927, 932, 557 N.E.2d 939) and has been held to be inapplicable where two different statutes are concerned (*People v. Tovar* (1988), 169 Ill. App. 3d 986, 995, 523 N.E.2d 1178). Because defendant was convicted

of separate offenses under two different statutes, the Cannabis Control Act (Ill. Rev. Stat. 1987, ch. 56½, par. 702 *et seq.*) and the Illinois Controlled Substances Act (Ill. Rev. Stat. 1987, ch. 56½, par. 1100 *et seq.*), *Manning* is inapplicable.

The judgment of the circuit court of Kane County is affirmed.

Affirmed.

DUNN and BOWMAN, JJ., concur.